[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 14, 2003
THOMAS K. KAHN
CLERK

No. 03-10539
Non-Argument Calendar

D. C. Docket No. 02-20877-CV-PCH

GALACTIC TOWING, INC.,
a Florida corporation,

Plaintiff-Appellant,

versus

CITY OF MIAMI BEACH,
a municipal corporation,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Florida

**(August 14, 2003)**

Before BARKETT, HULL and RONEY, Circuit Judges.

PER CURIAM:

Plaintiff Galactic Towing, Inc. ("Galactic"), a motor vehicle towing operator, filed a complaint seeking declaratory and injunctive relief to enjoin enforcement of certain sections of Defendant City of Miami Beach's ("City") Municipal Code regulating motor vehicle towing. The district court denied Galactic's requested relief and granted summary judgment in favor of the City. The principal issue in this case is whether the City's regulations fall within the public safety exception to the preemption contained in The Interstate Commerce Commission Termination Act ("ICCTA"), as amended, 49 U.S.C. § 14501(c)(2)(A). After *de novo* review, we affirm the district court's ruling that the City's challenged motor vehicle towing regulations fall within the public safety exception to ICCTA, as recently interpreted by the Supreme Court in *City of Columbus v. Ours Garage & Towing Serv., Inc.*, 536 U.S. 424 (2002), and thus escape federal preemption. *See Galactic Towing, Inc. v. City of Miami Beach*, ___, F. Supp.2d ___, (S.D. Fla. Mar. 25, 2003).

Section 14501(c) of ICCTA, as amended, preempts provisions by a "State [or] political subdivision of a State . . . related to a price, route, or service of any motor vehicle carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c) (2000).[1] ICCTA, however, provides an exception to this general federal

---

[1] The Interstate Commerce Act, as amended by the Federal Aviation Administration Authorization Act of 1994, 108 Stat. 1606, and the ICC Termination Act of 1995, 109 Stat. 899, states in relevant part:

preemption, directing that it "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." *Id.* § 14501(c)(2)(A).

In *Ours Garage*, a similar vehicle towing case, the Supreme Court recently interpreted the preemptive force of § 14501(c) of ICCTA. The Court first noted that although § 14501(c) generally preempts state regulation of the "price, route, or service of any motor carrier," the statutory exception to this preemption for "safety regulatory authority of a State with respect to motor vehicles" saves both state and municipal regulations falling within its reach from federal preemption. *Ours Garage*, 536 U.S. at 428. The Court reasoned that "Congress' clear purpose in § 14501(c)(2)(A) is to ensure that its preemption of States' economic authority over motor carriers of property, § 14501(c)(1), 'not restrict' the preexisting and traditional state police power over safety." *Id.* at 439. As such, the Court stated that any local regulation of "prices, routes, or services of tow trucks that is not genuinely responsive to safety concerns garners no exemption from § 14501(c)(1)'s preemption rule." *Id.*

---

(1) GENERAL RULE. – Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier ... with respect to the transportation of property.
(2) MATTERS NOT COVERED. – Paragraph (1) –
(A) shall not restrict the safety regulatory authority of a State with respect to motor vehicles ... or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization . . ..
 49 U.S.C. § 14501(c) (2000).

at 442. The Court expressed no opinion as to the scope of local regulations that are indeed "genuinely responsive" to public safety concerns.

Galactic makes essentially three arguments on appeal.

1. Whether the Ordinance is Genuinely Related to Safety.

Galactic argues that the district court erred by ruling that the challenged sections of the City's vehicle towing ordinance fall within § 14501(c)(2)(A)'s public safety exception because the record fails to support a finding that the ordinance is "genuinely responsive" to safety concerns, as required by *Ours Garage.*

Galactic contends that certain sections of the City's non-consensual towing ordinance, embodied in §§ 106-264 (towing permit), 106-266 (business application requirement), 106-268(a)(1) (written authorization for tow), and 106-268(a)(5) (storage within city limits) are not genuinely responsive to the City's safety concerns.[2]

---

[2]

**Sec. 106-264. Permit required.**

(a) No business enterprise shall engage in the business of recovering, towing, removing and storing of vehicles parked on private real property and parked without the permission of the owner of the private real property unless such business enterprise shall first apply for and obtain, and subsequently maintain in unrevoked status, a permit issued pursuant to this article.

(b) The requirement for a permit described in subsection (a) of this section is a requirement separate and apart from and in addition to any county or city requirements for occupational licenses. The required permit is a regulatory permit and not a revenue-generating permit.

**Sec. 106-266. Permitting of business enterprises.**

(a) *Application.* All business enterprises desiring to obtain an initial permit or renew a previously issued and unrevoked permit shall submit an application in writing to the city manager

4

or his designee on forms prescribed by the city manager.

* * *

(b) *Standards for issuance of a permit.* The city manager or his designee shall approve the application for issuance or renewal of a license hereunder where he finds:

(1) That the application has been fully completed and submitted;

(2) That the initial application or renewal application fee has been paid;

(3) That proof of insurance, as required in section 106-263, has been met; and

(4) That the applicant has been subject to a complete background investigation as it affects the towing industry, conducted by the chief or his designee and it has been determined by the chief that:

a. The applying business enterprise, if a corporation, does not have as an officer or director, a person who is or was an officer, director, partner or sole proprietor of a business enterprise which has a currently suspended permit or has had its permit revoked within five years of the date of application;

b. The applying business enterprise, if a partnership, does not have as a partner a person who is or was an officer, director, partner or sole proprietorship of a business enterprise which has a currently suspended permit or has had its permit revoked within five years of the date of application;

c. The applying business enterprise, if a sole proprietorship, does not have as the sole proprietor a person who is or was an officer, director, partner or sole proprietor of a business enterprise, which as a currently suspended permit or has had its permit revoked within five years of the date of application;

d. The permit is not revoked or currently under suspension; or

e. No fraud or willful and knowing misrepresentation or false statement was made in the application.

## Sec. 106-268. Additional requirements.

(a) No business enterprise issued a permit under this article shall do any of the following:

(1) Recover, tow, remove or store a vehicle except upon the express instruction and written authorization demonstrating a signature of the property owner or agent to the business enterprise

The district court carefully considered the challenged sections of the City's vehicle towing ordinance, identifying and discussing analogous towing ordinances where courts held them to fall under the purview of § 14501(c)(2)(A). *See Galactic Towing, Inc. v. City of Miami Beach*, ___ F. Supp.2d ___, (S.D. Fla. Mar. 25, 2003).

The record supports the district court's ruling that the challenged sections of the City's ordinance are "genuinely responsive" to public safety concerns. Several analogous cases have upheld similar city ordinances. The Fifth Circuit, on remand from the Supreme Court subsequent to its *Ours Garage* decision, recently denied a tow truck company's preemption challenge to a similar city ordinance regulating vehicle towing, holding that the ordinance fell under the purview of §

---

requesting the tow or removal. Such agent shall not be an officer or employee of the business enterprise. No such instruction shall be considered to have been given by the mere posting of the notice as required by subsection (d)(1) of section 106-269. No such instruction shall be considered to have been given by virtue of the mere terms of any contract or agreement between a business enterprise and a property owner. No such instruction shall be considered to have been given where the instruction occurs in advance of the actual unauthorized parking of the vehicle. No such instruction shall be considered to have been given where the instruction is general in nature and unrelated to specific, individual and identifiable vehicles which are already unauthorizedly parked.

\* \* \*

(5) a. For the first 48 hours, store or impound a towed vehicle unless the towed vehicle is stored or impounded within the confines of the city at an authorized storage facility.

14501(c)(2)(A)'s public safety exception. *See Cole v. City of Dallas*, 314 F.3d 730 (5th Cir. 2002) (regulation requiring criminal history included within safety exception). Likewise, a Washington appellate court recently upheld a similar preemption challenge under § 14501(c). *See Fife Enterprises v. Washington State Patrol*, 113 Wash. App. 1011 (Wash. App. 2002) (unpub.) (licensing and record keeping requirements exempt under safety exception); *see also Ace Auto Body & Towing, Ltd. v. City of New York*, 171 F.3d 765 (2d Cir. 1999) (towing ordinance requiring, *inter alia*, licensing, display of information, reporting, record keeping, disclosure of criminal history, insurance, posting of bond by towing companies, and maintaining local storage and repair facilities, fell within the safety exception); *Hott v. City of San Jose*, 92 F. Supp.2d 996 (N.D. Cal. 2000) (holding that regulations requiring liability insurance, criminal background check, displaying of information, reporting, and record keeping were all within scope of safety exception).

The district court did not err in holding the challenged sections of the City's vehicle ordinance to fall under the purview of the § 14501(c)(2)(A)'s public safety exception.

    2.    <u>Proof of Legislative Intent</u>.

Galactic argues that, because the City offered "no direct proof" of the City's legislative intent in the implementation of the challenged ordinances, the district court erroneously granted the City's motion for summary judgment.

There is direct evidence of the City's legislative intent in the implementation of the challenged ordinances to support the district court's grant of the City's motion for summary judgment. The text of the challenged ordinance specifically states:

> The city commission finds and determines that the unauthorized parking of vehicles that cannot be removed constitutes a public nuisance and public emergency effecting the property, public safety and welfare of the citizens and residents of the city.

Miami Beach Code § 106-257. The text of the ordinance itself therefore expressly articulates a public safety purpose. Furthermore, the City offered affidavits from two City officials, the Assistant City Manager and the Assistant Chief of Police. Both affidavits contained relevant information on how the challenged sections of the City's vehicle towing ordinance affect *safety concerns*. Although Galactic had the opportunity to refute those affidavits in the district court, it failed to do so. Instead, it rested on its pleadings. *See Valdivieso v. Atlas Air, Inc.*, 305 F.3d 1283, 1284 (11th Cir. 2002) ("The non-moving party, however, may not rest on mere allegations or denials of the adverse party's pleading when a motion for summary judgment is made and supported by affidavits . . . .") (internal quotation and citation omitted).

8

3.     Failure to Strike Affidavits.

Galactic argues the district court abused its discretion by denying Galactic's motion to strike affidavits from two City officials because they consisted of "opinions, mere speculation, and fabricated claims."   There was no abuse of discretion by denying Galactic's motion to strike these affidavits and admitting the same. *See Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1343 (11th Cir. 2000) (no abuse of discretion in denying motion to strike affidavits).

AFFIRMED.