[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 29, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13643

_____

D. C. Docket No. 06-00252-CV-BE-S

VAN ALLEN TAYLOR,
LYMAN AGENCY, INC.,
an Alabama corporation,

Plaintiffs-Appellants,

versus

STATE OF ALABAMA,
TROY KING,
as Attorney General of the State of Alabama, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(April 29, 2008)**

Before BLACK, CARNES and COX, Circuit Judges.

PER CURIAM:

Van Allen Taylor and Lyman Agency, Inc. appeal the dismissal of a preemption claim, which sought to prevent enforcement of certain regulations promulgated by the Alabama Manufactured Housing Commission (AMHC). The AMHC regulations at issue require transporters of manufactured homes to become "Certified Installers," and comply with a 72-hour notice requirement upon delivering a manufactured home to its final destination. Appellants claim these regulations are preempted by a federal law prohibiting states from enacting regulations "related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). AMHC defends the regulations by claiming they fall within the "safety regulatory authority" exception of § 14501(c)(2). We do not reach the merits of this dispute today because of the unusual procedural posture of the case. Instead, we remand with instructions for additional findings of fact so the issue may be resolved with the benefit of a more complete understanding of the regulations at issue and their impact on motor carriers.[1]

[1] We do not address Appellants' claims regarding the preemption of other Alabama regulations because they were not pled. Specifically, Appellants briefed arguments that Alabama's insurance and liability requirements are preempted by the Carmack Amendment, 49 U.S.C. § 14706 and 49 U.S.C. § 14501(c)(3). Presumably Appellants refer to part 15 of the AMHC regulations. However, we cannot address these claims because they were not fairly raised in the complaint. In contrast to the other challenged regulations that were specifically identified and attached to the complaint, the liability and insurance regulations were only vaguely alluded to and the complaint makes no specific reference to the Carmack Amendment or § 14501(c)(3) so as to fairly place Defendants on notice of the claims against them. Further,

# I. BACKGROUND

Van Allen Taylor is a truck driver and the president of Lyman Agency, Inc., an Alabama corporation. Taylor and Lyman transport manufactured houses, but do not install those houses upon delivery. AMHC regulates the manufactured housing industry on behalf of the State of Alabama. AMHC has promulgated regulations that require transporters of manufactured homes to (1) become Certified Installers, and (2) comply with a 72-hour notice requirement upon delivering a manufactured home to its final destination.

The first regulation requires "transporters" of manufactured homes to become "certified installers." Ala. Admin. Code r. 535-X-12-.03. A Certified Installer is defined as "[a] person certified by the Commission to install a manufactured home or manufactured building." *Id.* r. 535-X-12-.02.[2] To obtain certification an applicant must pay a certification fee, complete an "installer's course," pass a test, pay an annual fee, and complete a "refresher course on installation" every two years. *Id.* r. 535-X-12-.03. Failure to timely complete any

---

Plaintiffs did not seek permission to amend their complaint to include these claims even after the pleading flaw was raised as a defense in briefing before the district court. Whether Plaintiffs will be allowed to amend their complaint on remand to include these claims will rest within the sound discretion of the district court.

[2] Minor amendments were made to Chapter 535-X-12 after the initiation of this case. The amendments do not appear to change the substantive dispute between the parties. We cite to the current version of the Chapter as amended on November 5, 2007 and effective on December 10, 2007.

of the certification requirements can result in the loss of certification, *id.* r. 535-X-12-.03, and the imposition of fines, *id.* r. 535-X-12-.08(1). The certification requirement contains a broad exception: transporters that are working under contract with a licensed manufacturer or retailer of manufactured homes need not comply with the certification requirements. *Id.* r. 535-X-12-.03(1). The regulation's purpose is to ensure manufactured homes are installed by "a person duly certified by the Commission" for the "health, safety, and welfare of people who utilize manufactured homes." *Id.* r. 535-X-12-.01.

The second regulation at issue imposes a 72-hour notification requirement on "Certified installers or anyone else who pull and drop a home or building for final site delivery/installation . . . ." Ala. Admin. Code r. 535-X-13-.11(4). AMHC must be given notice of a manufactured home's exact location within 72 hours of delivery. *Id.* The stated purpose of the rule is to "[p]rovide for the health, safety, and welfare of people who utilize manufactured homes and buildings for their personal residences and providing safety for other adjacent properties." *Id.* r. 535-X-13-.01.

Taylor believed both regulations, as applied to transporters of manufactured homes, were preempted by federal law governing motor carriers. According to Taylor's complaint, he "renounced, tore up and destroyed his AMHC license as an

4

installer" in the office of Mr. Sloan. Without certification Taylor continued operating a truck for Lyman and continued to transport manufactured homes. According to the complaint, criminal charges were brought against Taylor based on allegations that he engaged in the illegal transportation and installation of manufactured homes.

On February 3, 2006, believing AMHC's regulations were preempted by 49 U.S.C. § 14501, Taylor and Lyman filed this action in federal court seeking declaratory and injunctive relief and damages against the State of Alabama, the Alabama Attorney General, the Alabama Manufactured Housing Commission (AMHC), other individuals in their official capacities as agents of AMHC, and the director of the AMHC, Jim Sloan, in his individual capacity.

A little over a month later, Defendants responded by filing a motion seeking to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, seeking summary judgment under Rule 56. The district court issued an order indicating it would not consider arguments for summary judgment at such an early stage of the litigation. Subsequently, Plaintiffs amended their complaint and Defendants' motion to dismiss became moot.

On April 18, 2006, Defendants responded to the amended complaint by filing an answer and a motion for judgment on the pleadings under Rule 12(c).

The 12(c) motion relied both on the pleadings and evidentiary submissions. Shortly thereafter the parties sought and were granted a voluntary stay of proceedings to permit them to explore settlement and attempt to seek guidance from federal regulatory authorities. Neither effort was successful and the stay was lifted on July 6, 2006.

The parties were instructed to resume briefing on the Defendants' motion for judgment on the pleadings and to conform their submissions to "Appendix II" of the court's initial order. The appendix is titled "Summary Judgment Requirements." Plaintiffs' subsequent memo in opposition, however, did not contain a statement of undisputed facts in accordance with the requirements of Appendix II. The district court heard oral argument on Defendants' motion in June 2007. At oral argument, there was no indication as to whether the motion had been converted to one for summary judgment or whether the court intended to exclude the Defendants' evidentiary submission. The district court issued an order granting Defendants' motion. The order characterized Defendants' motion as a motion for judgment on the pleadings and dismissed all claims. With respect to the preemption issue, the district court held Alabama's regulations were not preempted under § 14501 because they fell within the safety regulatory authority exception of § 14501(c)(2)(A).

On appeal, Taylor and Lyman only challenge the dismissal of their claim seeking declaratory and injunctive relief against the State of Alabama, AMHC, and Jim Sloan from enforcement of AMHC regulations.[3]  We easily affirm the district court's dismissal of the State of Alabama and AMHC because claims against these entities are barred by the Eleventh Amendment.  *See Edelman v. Jordan*, 94 S. Ct. 1347, 1355-56 (1974); *Will v. Mich. Dep't of State Police*, 109 S. Ct. 2304, 2309-10 (1989).  What remains is Appellants' claim seeking prospective injunctive and declaratory relief against state officials on the basis that they are enforcing state laws in derogation of federal law.  *See Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1220 (11th Cir. 2000) ("[T]he Eleventh Amendment does not generally prohibit suits against state officials in federal court seeking only prospective injunctive or declaratory relief . . . ."); *see also Ex Parte Young*, 28 S. Ct. 441 (1908); *Sandoval v. Hogan*, 197 F.3d 484, 500

---

[3] We do not read Appellants' briefs to challenge the disposition of their claims for monetary damages against Jim Sloan or any other defendant.  *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed. . . . Any issue that an appellant wants the Court to address should be specifically and clearly identified in the brief.").  Therefore we do not consider any of Appellants' claims for monetary damages and do not disturb the district court's ruling with respect to these claims upon remanding the case.

7

(11th Cir. 1999), *overruled on other grounds*, 121 S. Ct. 1551 (2001).[4]  We confine our discussion to the resolution of this claim.

## II.  STANDARD OF REVIEW

We review *de novo* the grant of a motion for judgment on the pleadings. *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1213 (11th Cir. 2001).  Under Federal Rule of Civil Procedure 12(c) a party may move for a judgment on the pleadings after the pleadings are closed.  "If . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).[5]

---

[4] The *Ex Parte Young* doctrine prohibits state officers from enforcing state policies "in violation of the Constitution or federal law under a legal 'fiction' that 'creates an imaginary distinction between the state and its officers, deeming the officers to act without the state's authority, and hence, without immunity protection, when they enforce state laws in derogation' of federal or constitutional rights."  *Sandoval*, 197 F.3d at 500 (quoting *Summit Med. Assoc. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir.1999)).

[5] Effective December 1, 2007, the Federal Rules of Civil Procedure were amended to effect a "general restyling . . . to make them more easily understood and to make style and terminology consistent."  Fed. R. Civ. P. 1 advisory committee's note on 2007 Amendment.  Except for a "very small number of minor technical amendments" not relevant here, the amendments were "intended to make no changes in substantive meaning."  *Id.*  The Amendments to Rule 12 were "intended to be stylistic only."  Fed. R. Civ. P. 12 advisory committee's note on 2007 Amendment.  In this opinion, although we quote the new language of Rule 12, we apply the same substantive standard that governed a motion for judgment on the pleadings when it was decided by the district court.

## III.  DISCUSSION

*A.  Background for § 14501(c) Preemption Analysis*

Under the Supremacy Clause, state laws that "interfere with, or are contrary to the laws of congress" are preempted by federal law.  *Gibbons v. Ogden*, 22 U.S. 1, 211 (1824).  Preemption analysis begins "with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 122 S. Ct. 2226, 2232 (2002) (quoting *Wis. Pub. Intervenor v. Mortier*, 111 S. Ct. 2476, 2482 (1991)).

The Interstate Commerce Act, as amended,[6] was enacted by Congress for the purpose of preempting state trucking regulation.  *Rowe v. N.H. Motor Transp. Ass'n*, 128 S. Ct. 989, 993-94 (2008).  The Act replaced the then-existing patchwork of intrastate trucking laws with a uniform federal standard.  It expressly preempts regulations by States "related to a price, route, or service of any motor carrier . . . with respect to the transportation of property."  49 U.S.C. § 14501(c)(1).  This statutory language was borrowed from the Airline Deregulation Act of 1978 and has been interpreted consistently by the Supreme Court in both settings.  *See Rowe*, 128 S. Ct. at 994-95; *Morales v. Trans World Air-lines, Inc.*, 112 S. Ct.

---

[6] The Interstate Commerce Act, was amended by the Federal Aviation Administration Authorization Act of 1994, 108 Stat. 1606, and the ICC Termination Act of 1995, 109 Stat. 899.

2031, 2034 (1992). In *Morales*, the Court interpreted the term "relating to" broadly. It determined "[s]tate enforcement actions having a connection with or reference to" carrier "rates, routes, or services are pre-empted." 112 S. Ct. at 2037 (quotations omitted) (holding federal law preempts State enforcement of consumer-fraud statutes against airlines). The same broad interpretation applies to the "related to" language of § 14501(c)(1). *Rowe*, 128 S. Ct. at 994-95.[7]

Despite the broad reach of § 14501(c)(1)'s statutory language, "federal law does not pre-empt state laws that affect rates, routes, or services in 'too tenuous, remote, or peripheral a manner.'" *Id.* at 997 (quoting *Morales*, 112 S. Ct. at 2040) ("[S]tate regulation that broadly prohibits certain forms of conduct and affects, say, truckdrivers, only in their capacity as members of the public (*e.g.*, a prohibition on smoking in certain public places)" would not be preempted). Instead, a state law is

---

[7] In *Rowe*, the Supreme Court recently held two sections of a Maine act were preempted by 49 U.S.C. §§ 14501(c)(1) and 41713(b)(4)(A). *See* 128 S. Ct. at 993. The Maine act attempted to regulate the delivery and sale of tobacco products for the purpose of preventing tobacco sales to minors. It forbade licensed tobacco retailers from using a "delivery service" unless that service used particular delivery procedures. *Id.* at 995. "In doing so, it focuses on trucking and other motor carrier services (which make up a substantial portion of all delivery services . . . ), thereby creating a direct connection with motor carrier services." *Id.* (quotations omitted). Maine did not argue, as Appellees argue here, that the law fell within the statutorily created exception for "safety regulatory authority." Rather, Maine argued for the recognition of a separate exception for the exercise of a State's public health authority in the context of underage smoking. *Id.* at 996-97. The Court concluded no such exception exists. *Id.* at 997. Despite the difference between *Rowe* and the present case, *Rowe* is helpful here to the extent it provides general guidance for determining, in the first instance, whether a regulation is within the preemptive scope of § 14501(c)(1).

only preempted if it has a "*significant* impact on carrier rates, routes, or services." *Id*. (quotation omitted).

While Congress generally preempted State regulation of motor carriers, it simultaneously carved out an exception to the rule by saving to the States "safety regulatory authority . . . with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A); *Ours Garage*, 122 S. Ct. at 2230. A "motor vehicle" is defined as "a vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway in transportation . . . ." 49 U.S.C. § 13102(16). To fall within the safety regulatory authority exception, a State's regulation must be *genuinely responsive* to safety concerns. Any regulation "that is not genuinely responsive to safety concerns garners no exemption from § 14501(c)(1)'s preemption rule." *Ours Garage*, 122 S. Ct. at 2237 (holding safety regulatory exception extends to municipalities); *see also Galactic Towing, Inc. v. City of Miami Beach*, 341 F.3d 1249, 1251 (11th Cir. 2003).

In *Ours Garage*, the Supreme Court noted the Act's overall purpose was to deregulate certain aspects of intrastate transportation that placed unreasonable burdens on free trade, interstate commerce, and American consumers. 122 S. Ct. at 2236. At the same time, "Congress' clear purpose in § 14501(c)(2)(A) is to ensure that its preemption of States' economic authority over motor carriers of property,

11

§ 14501(c)(1), 'not restrict' the preexisting and traditional state police power over safety." *Id.*

In light of these cases, a framework exists for analyzing motor carrier preemption claims under § 14501(c). First, a court must determine whether the regulation at issue is "related to," that is, has a *connection with* a price, route, or service of any motor carrier with respect to the transportation of property. *See Rowe*, 128 S. Ct. at 994-95; *Morales*, 112 S. Ct. at 2037. Second, if a regulation does have a connection with a price, route, or service, it will be preempted if the regulation has a *significant impact* on those prices, routes, or services. *See Rowe*, 128 S. Ct. at 997-98. If the impact of the State's regulation is merely tenuous, remote, or peripheral the regulation is not preempted by § 14501(c)(1). *See id.* Third, if a regulation would otherwise be preempted by § 14501(c)(1), it can be saved under the safety regulatory authority exception if the regulation concerns safety "with respect to motor vehicles," § 14501(c)(2)(A), and is *genuinely responsive* to the State's safety concerns, *see Ours Garage*, 122 S. Ct. at 2237; *Galactic Towing*, 341 F.3d at 1251-53.

*B.*     *District Court Opinion*

We now turn to apply this analysis to the district court's opinion. Initially, we must determine whether this case was decided on summary judgment or on a motion for judgment on the pleadings. Defendants submitted evidence with their motion for judgment on the pleadings, yet it is unclear whether the court specifically converted the motion to one for summary judgment, and consequently, it is difficult to be satisfied each party received adequate notice of the procedural posture of the decision. The district court did instruct the parties to conform their briefing to "Appendix II" of its initial order, which governed the requirements of summary judgment. At the same time, a review of the oral argument transcript and order leaves us uncertain what underlying facts were relied upon by the district court in reaching its ultimate conclusion that the regulations at issue are a valid exercise of the State's safety regulatory authority. While there may be clear cut cases where preemption questions can be resolved on the pleadings, we observe it is far more common to resolve issues like the ones here at summary judgment with the benefit of a complete understanding of the impact of the regulations. *See, e.g.*, *Ours Garage*, 122 S. Ct. at 2231; *Galactic Towing*, 341 F.3d at 1250; *R. Mayer of Atlanta, Inc. v. City of Atlanta*, 158 F.3d 538, 540 (11th Cir. 1998), *abrogated by Ours Garage*, 122 S. Ct. at 2232; *N.H. Motor Transp. Ass'n v. Rowe*, 448 F.3d 66,

13

69 (1st Cir. 2006), *aff'd*, 128 S. Ct. 989.  In addition to being uncertain of the procedural basis for the district court's decision, we note the district court did not have the benefit of the Supreme Court's most recent motor carrier preemption jurisprudence, articulated in *Rowe v. New Hampshire Motor Transportation Ass'n*, 128 S. Ct. 989 (2008).  For these reasons, we vacate the district court's preemption analysis and remand for further proceedings.

On remand, the district court should permit further development of the factual record and make findings that include the following matters:  (a) Are both of the state requirements at issue regulations that are "related to a price, route or service" within the meaning of § 14501(c)(1)?  What facts support this determination?;  (b) How do the regulations impact motor carriers?;  (c) Is a manufactured home a "motor vehicle" within the meaning of the "safety regulatory authority" exception of § 14501(c)(2)?  If so, why is it properly characterized as a "motor vehicle?";  (d) Do the safety concerns expressed in the state regulations at issue relate to the safety of the manufactured home *after* it is delivered, or do they relate to highway safety while the home is being delivered?  What facts support this conclusion?;  (e) What are the articulated safety concerns for the regulations and to what extent do the regulations address those concerns?  In particular, what

14

kind of training does the "installer's course" entail?;[8] and (f) is AMHC responsible for Alabama public safety initiatives with respect to motor vehicles? The above findings should be discussed as they relate to both the Certified Installer requirement and the 72-hour notification requirement; each requirement should be analyzed separately.

We remand for further proceedings and emphasize that nothing in this opinion should be construed as an analysis of any of the AMHC regulations.

## IV. CONCLUSION

We do not reach the merits of the preemption dispute today because of the unusual procedural posture of the case. We vacate the district court's order with respect to its preemption analysis under § 14501(c) and remand for further proceedings and additional findings to allow the preemption issue to be resolved with the benefit of a more complete understanding of the regulations at issue and their impact on motor carriers. We affirm the district court's dismissal of the State of Alabama and its agency, the Alabama Manufactured Housing Commission, and

---

[8] Is the content of the training limited to installation, or—as was represented at oral argument—does it entail training on the safe transport of manufactured homes? If the training does involve the "safe transport" of manufactured homes, does this "safe transport" relate to highway safety or does it only relate to delivery of the homes in undamaged condition? If the training does involve highway safety, what percentage of the training course is dedicated to this material?

15

we do not disturb its other rulings with respect to claims for money damages,

which were not challenged on appeal.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**