# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### March 5, 2013 Session

## THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY v. MICHAEL MYERS ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 11C3955      Hamilton V. Gayden, Jr., Judge**

---

**No. M2012-00742-COA-R3-CV - Filed April 22, 2013**

---

Defendants appeal from an order of the trial court enjoining them from operating a wrecker service in Davidson County without a license. The trial court found that the ordinances at issue applied to Defendants' wrecker services and that Defendants violated the provisions of the Metropolitan Code of Laws by their operation of a wrecker service without a license in Davidson County. The trial court also rejected Defendants' arguments that the ordinances were preempted by federal law and violated the equal protection guarantees of the United States and Tennessee Constitutions. The trial court then enjoined Defendants from operating a wrecker service in Davidson County. We affirm the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, J.J., joined.

Phillip L. Davidson, Nashville, Tennessee, for the appellants, Michael Myers and Diane Lewis d/b/a Champion Towing (a/k/a City Towing & Transport) and d/b/a All Around Towing.

Kathryn S. Evans, Cynthia E. Gross, and Jason P. Bobo, Nashville, Tennessee, for the appellee, The Metropolitan Government of Nashville and Davidson County.

## OPINION

Defendants, Michael Myers and Diane Lewis own and operate Champion Towing, which is located in LaVergne, Rutherford County, Tennessee. Myers and Lewis previously owned another wrecker service, City Towing & Transport, which was located in Nashville,

Tennessee, until the suspension of City Towing's wrecker license by the Metropolitan Government of Nashville and Davidson County ("Metro") in January 2006.[1] In early 2008, Myers and Lewis doing business as Champion Towing (collectively "Defendants") were denied a license to operate a wrecker service in Davidson County. Despite this, Defendants made numerous tows in Davidson County from April 2010 through the hearing.[2] Additionally, several tows were made using a truck registered to All Around Towing, which is also not licensed in Davidson County.

On February 4, 2011, Metro filed a complaint against Defendants in the Environmental Court Division of the Davidson County General Sessions Court alleging that Defendants were in violation of the Metro Code by engaging in the business of providing a wrecker service without a license (Metro Code § 6.80.010), by making non-consent tows without prior approval from the Metropolitan Licensing Commission (Metro Code § 6.80.170(A)), and by failing to report tows to the Metro Police Department (Metro Code § 6.80.175). Metro also sought an injunction preventing Defendants from operating a wrecker service or wrecker vehicle within Davidson County. An order was entered on May 11, 2011, in favor of Metro. Defendants appealed to the general sessions court, which upheld the Environmental Court's ruling.

Defendants appealed to the circuit court. At the hearing, Defendants did not dispute the facts, but argued that Metro Code § 6.80.010 did not apply to their wrecker service; that Metro Code §§ 6.80.010, 6.80.020 were unconstitutional because they violated the Equal Protection Clause of the United States and Tennessee Constitutions; and that the Metropolitan Transportation Licensing Commission had no authority to regulate because the Commission's authority had been preempted by 49 U.S.C. § 14501. Following a hearing on December 2, 2011, the trial court entered an order finding Defendants in violation of the applicable provisions of the Metro Code and enjoining Defendants from operating or causing another person to operate a wrecker service in Davidson County, finding that it was clear the ordinance applied to wrecker services operating within the county. The trial court also rejected the argument that the ordinances violated equal protection because it distinguished between different classes of wrecker services finding that there was a rational basis for the distinction between wrecker services that operated primarily inside versus outside of Davidson County. The court also found that federal law had not preempted the Commission's authority because the provisions were "clearly related to safety" noting this court's decision

---

[1]City Towing appealed the revocation of its license to this court; we affirmed the revocation in *City Towing & Transport, Inc. v. Transp. Licensing Comm'n of the Metro. Gov. of Nashville & Davidson Cnty.*, No. M2007-01246-COA-R3-CV, 2009 WL 276761 (Tenn. Ct. App. Feb. 3, 2009).

[2]The facts of this case are not in dispute.

in *City Towing*, 2009 WL 276761, in which Myers and Lewis as City Towing had made a similar preemption argument that was rejected by this court.

On March 28, 2011, the trial court set aside its previous order due to an error in the posting of the order and re-entered the order enjoining Defendants from operating or causing another person to operate a wrecker service in Davidson County without a license. Defendants filed a timely appeal.

## ANALYSIS

On appeal, Defendants argue that the trial court erred in holding that the Metro Code sections under scrutiny were not preempted as a matter of law by virtue of 49 U.S.C. §§ 14501 *et seq.*, that the trial judge erred in holding that the Metro Code sections did not violate the equal protection guarantees of the United States and Tennessee Constitutions, and that the trial court erred in holding that Defendants' wrecker services were governed by the Metropolitan Code. The facts of this action are not in dispute and the issues on appeal present only questions of law. Thus, our review of the trial court's decision is de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

## I. FEDERAL PREEMPTION

Defendants argue that the Metro Code provisions governing wrecker services are invalid because they are preempted as a matter of law by 49 U.S.C. §§ 14501 *et seq*. Metro contends that the ordinances challenged are safety related and part of an overall regulatory scheme designed to protect its citizens. The trial court found that the ordinances at issue were not preempted by federal law because the ordinances "clearly regulate safety."

If a municipal law conflicts with a federal statute, the Supremacy Clause of the United States Constitution causes the municipal law to be preempted and of no effect. *City Towing*, 2009 WL 276761, at *4 (citing *City of Columbus v. Ours Garage and Wrecker Service*, 536 U.S. 424, 431-33 (2002)). The federal statutes codified at 49 U.S.C. §§ 14501 *et seq*. establish federal authority over intrastate transportation providing in relevant part:

(c) Motor carriers of property.

(1) General rule. Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a

carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c).[3] The statute also provides specific exemptions stating:

(2) Matters not covered. Paragraph (1) --

(A) *shall not restrict the safety regulatory authority* of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization.

(B) does not apply to intrastate transportation of household goods; and

(C) does not apply to the authority of a State or a political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle.

Thus, under these provisions a municipality may regulate wrecker services provided the regulations are "genuinely responsive" to public safety concerns. *City of Columbus*, 536 U.S. at 442. The trial court found that the provisions at issue were "clearly" related to safety, finding that the Metro Government regulates the safety of tow trucks by requiring wrecker services to obtain and maintain licenses and adequate insurance coverage when they routinely operate in the Metropolitan Government area. The trial court found the Metro Government had an interest in protecting its citizens when wrecker services pick up and transport their vehicles, particularly when doing so without the owners' consent. The court noted these concerns included:

[T]he potential for large and heavy tow trucks to injure people or property; the potential for violence between tow truck operators and citizens, particularly in

_____

[3]While the federal statute refers to states, the United States Supreme Court has held that this federal law allows municipalities as political subdivisions of the State to establish safety regulations governing motor carriers of property, including tow trucks. *City of Columbus v. Ours Garage & Wrecker Service, Inc.*, 536 U.S. 424, 428-29 (2002).

the case of non-consent tows; the safety of citizens when having to retrieve towed vehicles from unknown and potentially desolate locations; and the safety concern for police department resources being wasted responding to car theft reports from citizens, when their cars were actually towed but not reported by the tow company.

Notably, the trial court recognized the public safety purpose of the regulations, which is articulated in Metro Code § 6.80.020:

It is declared to be the purpose and intent of this chapter that all wreckers, towing services and wrecker services doing business within the area of the metropolitan government be licensed and required to have adequate insurance coverage in force as set out in this chapter for the protection and welfare of the public.

The trial court also noted this court's decision in *City Towing*, 2009 WL 276761. In that case, Myers and Lewis's previous wrecker service, City Towing, had its license revoked after the finding that it had violated several provisions of the Metro Code regulating wrecker services, specifically for failure to display a wrecker permit under Metro Code § 6.08.230(c) and failure to display the amount of the drop fee if the owner appeared prior to the towing under Metro Code § 6.80.550. City Towing made the same federal preemption argument challenging Metro Code § 6.08.230(c), which requires a wrecker to display its wrecker permit.[4] *City Towing*, 2009 WL 276761, at \*5. This court agreed with the trial court that the provision was safety related and served a legitimate interest in public safety, specifically agreeing with the trial court's conclusion that "[a]bsent the permit system, the Metropolitan Government would have no way of keeping up with the (required) periodic inspection of wreckers, and 'outlaw' wreckers could more easily avoid safety inspections . . . [t]he permit system is thus directly related to safety." *Id*.

In this case, Defendants were charged with violating three provisions of the Metro Code regulating wreckers services: Metro Code § 6.80.010 for engaging in the business of providing a wrecker service without a license, § 6.80.170(A) for making non-consent tows without prior approval from the Metropolitan Licensing Commission, and § 6.80.175 for

---

[4] Metro Code § 6.80.175, which requires a wrecker to call the police within one hour of a non-consent tow, was also argued to be preempted by federal law. *City Towing*, 2009 WL 276761, at \*4. However, this court found that City Towing's violation of that provision was part of a previous proceeding whose outcome was not at issue before the court and therefore did not reach the issue of whether that ordinance was related to safety. *Id*. City Towing conceded that Metro Code § 6.80.550(G) relating to the display of the drop fee notice was not preempted by federal law. *Id*. at \*5.

failing to report tows to the Metro Police Department. As this court recognized and held in *City Towing*, the permit and licensure system guarantees Metro with the ability to inspect the wreckers, thus Metro Code § 6.80.10 clearly is related to safety. Further, as the trial court recognized there are specific safety concerns related to the towing of vehicles such as the potential for altercations between the wrecker truck operator and the person being towed and the potential for waste of police department resources for reported thefts when the vehicle was actually towed, which are directly impacted by Metro Code §§ 6.80.170(A) and 6.80.175. Thus, these ordinance are "genuinely responsive" to safety. *See Galactic Towing v. City of Miami Beach*, 341 F.3d 1249, 1252 (11th Cir. 2003) (upholding ordinances regulating licensing, upon the finding that they were genuinely responsive to public safety concerns). Lastly, the Metro Code specifically recognizes that these provisions were enacted for the protection and welfare of the public. *See* Metro Code § 6.80.020. For the foregoing reasons, we affirm the trial court's conclusion that the ordinances, part of Metro Government's overall regulatory scheme governing the operation of wrecking services, is not preempted by federal law.

## II. APPLICABILITY OF METRO CODE PROVISIONS

Defendants next argue that Champion Towing does not fall within the Metro Code section at issue. Metro Code § 6.80.010 defines "wrecker service" as "the towing, transporting, conveying or removal of vehicles from one point to another within the area of the metropolitan government." Defendants argue that there was no finding of fact that any of the undisputed tows that occurred were from one point within Davidson County to another point within Davidson County. Further, Defendants argue that there was no allegation that "anything other than either a pick-up or the fact of towing occurred." Metro argues that the plain and ordinary meaning of the ordinance clearly indicates that it applies to any wrecker services operating within Davidson County and not that both the pick-up point and end point of the tow be located in Davidson County. Metro further argues that when Metro Code § 6.80.010 is read within the context of the entire chapter, it is clear the ordinance applies to wrecker services operating within Davidson County. Metro points to Metro Code § 6.80.020, which sets forth the purpose and intent of the chapter and provides: "it is declared to be the purpose and intent of this chapter *that all wreckers, towing services and wrecker services doing business within the area of the metropolitan government* be licensed and required to have adequate insurance coverage. . ." Metro Code § 6.80.020 then goes on to provide the exceptions when the chapter does not apply.

The primary rule of statutory construction is "to ascertain and give effect to the intention and purpose of the legislature." *Carson Creek Vacation Resorts, Inc. v. Department of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993); *see also McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002). Our duty is to seek a reasonable construction "in light of the purposes,

objectives, and spirit of the statute based on good sound reasoning." *Scott v. Ashland Healthcare Center,* Inc., 49 S.W.3d 281, 286 (Tenn. 2001) (quoting *State v. Turner*, 913 S.W.2d 158, 160 (Tenn. 1995)). To determine legislative intent, we must look to the plain and ordinary meaning of the language in the statute. *Gleaves*, 15 S.W.3d at 802. We must also examine any provision within the context of the entire statute and in light of its over-arching purpose and the goals it serves. *See State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000); *T.R. Mills Contractors, Inc. v. WRH Enterprises, LLC*, 93 S.W.3d 861, 867 (Tenn. Ct. App. 2002). We should "ascertain and give effect to legislative intent without unduly restricting or expanding a statute's coverage beyond its extended scope." *Riggs v. Burson*, 941 S.W.2d 44, 54 (Tenn. 1997) (citing *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)). We are to "give effect to every word, phrase, clause and sentence of the act in order to carry out the legislative intent." *Tidwell v. Collins*, 522 S.W.2d 674, 676-77 (Tenn. 1975); *In re Estate of Dobbins*, 987 S.W.2d 30, 34 (Tenn. Ct. App. 1998).

Using the above rules of statutory construction, we agree with the trial court's conclusion that the regulations clearly apply to wrecker services operating within the county. To adopt an interpretation that both the pick-up location and drop off location be at a point within Davidson County would clearly go against the purpose and objective of the ordinance, *Scott*, 49 S.W.3d at 286, and unduly restrict the ordinance's coverage, *Riggs*, 941 S.W.2d at 54. Thus, Defendants operate a wrecker service as defined within Metro Code § 6.80.010.

## III. EQUAL PROTECTION

Defendants also argue the trial court erred in determining the Metro Code sections at issue did not violate the equal protection guarantees of the United States and Tennessee Constitutions. Specifically, Defendants take issue with the four classifications codified at Metro Code § 6.80.020, which determine whether or not a wrecker service is subject to the regulations contained in the chapter. The ordinance states that:

> The provisions of this chapter shall not apply to a wrecker service located outside the area of the metropolitan government and which occasionally passes through or delivers vehicles within the area of the metropolitan government, unless such wrecker service picks up or delivers such vehicles within the area of the metropolitan government more than five times within any thirty-day period. Or unless the license or permit of such wrecker service, wrecker vehicle or wrecker driver has been revoked by the metropolitan transportation licensing commission; or unless the wrecker service consists of any of the owners or partners, or immediate family members of any owner or partner, of any company or firm, the license of which has been revoked by the metropolitan transportation licensing commission.

Metro Code § 6.80.020. Defendants do not dispute that Metro has the ability to regulate towing within its geographic confines; however, they argue that the distinction it draws between the wrecker services that fall within the regulations and those that do not, does not have a rational basis. An equal protection challenge that does not involve a suspect class or a fundamental right falls under the rational basis analysis. *Gray's Disposal Co., Inc. v. Metro. Gov't of Nashville*, 122 S.W.3d 148, 162-63 (Tenn. Ct. App. 2002). "If some reasonable basis can be found for the classification, or if any state of facts may reasonably be conceived to justify it, the classification will be upheld." *Id*. (citing *Tenn. Small School Sys. v. McWherter*, 851 S.W.2d 139, 153 (Tenn. 1993)).

The trial court determined that there was a rational basis for the classifications contained within Metro Code § 6.80.020, which distinguishes between wrecker services that operate primarily within Davidson County to those that operate primarily outside of Davidson County, finding that clearly the Metro Government would have a greater interest in regulating those wrecker services that operate within its confines versus wrecker services that only occasionally pass through the county towing vehicles. We agree. The ordinance also distinguishes between wrecker services that consist of owners or partners whose license has previously been revoked by the Metropolitan Licensing Commission, which is the case in this action, as Myers and Lewis previously owned City Towing, whose license was revoked. The trial court found, and we strongly agree, that Metro clearly has a rational basis for prohibiting wrecker services whose license was previously revoked for the failure to follow the laws implemented to protect public safety from operating within the county. Further, the Metro Government clearly has an interest in preventing owners whose license was revoked from simply creating a new wrecker service and then operating within Davidson County in order to bypass the regulations. As there is a rational basis for the classifications contained in Metro Code § 6.80.020, Defendants' equal protection argument fails.

## IN CONCLUSION

Having found no basis to Defendants' arguments regarding the applicability of the Metro Code provisions, the constitutional challenges, and federal preemption, we affirm the trial court's injunction against Defendants from operating within Davidson County based upon its violation of the Metro Code. The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellants, Michael Myers and Diane Lewis, jointly and severally.

_____
FRANK G. CLEMENT, JR., JUDGE