IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 7, 2001 Session

# WANDA CARY SCOTT v. ASHLAND HEALTHCARE CENTER, INC.,
## ET AL.

**Appeal by Permission from the Court of Appeals, Middle Section
Circuit Court for Cheatham County
No. 4737     Robert E. Burch, Judge**

---

### No. M1999-00346-SC-R11-CV - Filed July 9, 2001

---

We granted review of this case to determine whether the holder of a certificate of need may be held liable for the healthcare facility operator's tortious acts. We hold that the Tennessee statutes and rules governing certificates of need impliedly impose a non-delegable duty upon the certificate of need holder to initiate operation of the healthcare facility. We therefore reverse the judgment of the Court of Appeals, reverse the trial court's judgment, and remand this case to the trial court for further proceedings.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed;
Case Remanded to Trial Court.**

JANICE M. HOLDER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., and FRANK F. DROWOTA, III, ADOLPHO A. BIRCH, JR., and WILLIAM M. BARKER, JJ., joined.

Steve R. Darnell, Clarksville, Tennessee, for the appellant, Wanda Cary Scott.

Peter F. Klett and Robert Larry Estes, Nashville, Tennessee, for the appellees, Ashland Healthcare Center, Inc., Medical Holdings, Ltd., and Stephen W. Creekmore.

### OPINION

### BACKGROUND

This appeal arises from a wrongful death action filed by Wanda Cary Scott on behalf of the beneficiaries of Flois Cary Snoddy. Mr. Snoddy was a resident at Oakmont Care Center (Oakmont), operated by Monarch Nursing Homes, Inc. (Monarch), at the time of his death on July 6, 1994. Ms. Scott filed suit against Monarch, d/b/a Oakmont; Monarch's parent corporation, Red Bird Jet Corporation, d/b/a Paragon Healthcare and/or Paragon Companies; Ashland Healthcare, Inc. (Ashland); Medical Holdings, Ltd. (Medical Holdings), and Stephen W. Creekmore, Jr. Ms. Scott

alleged that Mr. Snoddy's death was the result of negligent care by the defendants in the operation of Oakmont.

Medical Holdings builds nursing homes across the United States. Ownership of each nursing home is transferred to a separate corporate entity, wholly-owned by Medical Holdings. Ashland is a wholly-owned subsidiary of Medical Holdings. Medical Holdings incorporated Ashland to build and own the Oakmont facility in Ashland City, Tennessee. Mr. Creekmore is the president and sole stockholder of both Ashland and Medical Holdings.

On November 21, 1988, Medical Holdings applied for and was issued a certificate of need[1] by the Tennessee Health Facilities Commission authorizing construction of "Ashland Healthcare Center d/b/a Ashland City Healthcare Center." During construction, Ashland entered into an agreement with Monarch under which Monarch would lease the Oakmont facility from Ashland and Monarch would operate the nursing home.

An application listing Ashland as the owner of the Oakmont facility was sent to the Tennessee Department of Health's Board of Licensing Health Care Facilities (the Licensing Board) in July of 1993 to obtain a license to operate the nursing home. The application was denied because the Licensing Board required that the business owner on the license application match the holder of the certificate of need.

In the interim, the Health Facilities Commission reissued the certificate of need in Ashland's name at the request of E. Graham Baker, counsel for Medical Holdings. The reissue was granted based upon Mr. Baker's representation that Medical Holdings, instead of Ashland, was inadvertently listed as the facility owner on the initial certificate of need application. The new certificate of need was issued on September 22, 1993, to Ashland for construction of Oakmont Care Center.[2]

A subsequent license application was filed with the Licensing Board in the name of "Ashland Healthcare Center, Inc., d/b/a Oakmont Care Center." The application indicated that Medical Holdings was the holding company of Ashland and that Monarch was under contract to operate the facility. The Licensing Board issued a six-month conditional license in Ashland's name on October 1, 1993.

At the end of the six-month conditional period, the license was reissued in Ashland's name. The following year's renewal application, filed in June of 1994, listed Monarch as the owner of the facility. The application was rejected based upon lack of proof that Monarch owned the facility. A

_____

[1]Under Tennessee law, a party wishing to construct certain types of health care facilities, including nursing homes, must first obtain a certificate of need from the Tennessee Health Facilities Commission. Tenn. Code Ann. § 68-11-106.

[2]A second license application was filed in August of 1993 listing Medical Holdings as the owner of the business. This application was held with the Licensing Board, and eventually rejected, due to the change of name on the certificate of need to Ashland.

subsequent renewal application in Ashland's name was granted on July 1, 1994. Monarch then filed a change-of-ownership application and was issued a license in Monarch's name on August 16, 1994. At the time of Mr. Snoddy's death, however, the license was still in Ashland's name.[3]

Mr. Creekmore testified in his deposition that the administrators who filed the license applications were not employees of Ashland[4] and had no authority to act on behalf of Ashland. Mr. Creekmore stated that he was unaware until litigation began that the certificate of need holder had to be the same entity as the license holder or that the license applications were filed in Ashland's name. Mr. Creekmore did, however, acknowledge that Mr. Baker and Lem Jones, general counsel for Medical Holdings, would have handled the certificate of need and licensing application process.

Don Brewer, president of Monarch, testified in his deposition that nothing was done without Mr. Creekmore's authorization. Mr. Brewer himself had at least one conversation with Mr. Creekmore during the licensing process regarding the problem with the name on the certificate of need. Mr. Brewer indicated that he had been advised that Mr. Creekmore was aware that the license could only be issued to Ashland. Moreover, the initial licensing application contained Mr. Creekmore's personal information, including banking references, members of his board of directors, and a list of other health care facilities owned by Mr. Creekmore. Mr. Brewer testified that Mr. Creekmore's personal information on the license application was most likely obtained from Mr. Creekmore or one of his representatives.

---

[3]The following time table may be helpful in following the series of events in this case.

| | |
|---|---|
| November 21, 1988 | Certificate of need issued to Medical Holdings. |
| November, 1990 | Lease between Ashland and Monarch signed and notarized. |
| July, 1993 | First license application in Ashland's name filed with the Licensing Board. Application denied based upon name differing from certificate of need holder. |
| September 23, 1993 | Certificate of need reissued in Ashland's name. |
| October 1, 1993 | Six-month conditional license issued in Ashland's name. Effective date of lease between Ashland and Monarch. |
| April 1, 1994 | License reissued in Ashland's name. |
| June, 1994 | Renewal license application in Monarch's name rejected based upon lack of proof that Monarch owned the facility. |
| July 1, 1994 | Renewal license application in Ashland's name granted. |
| July 6, 1994 | Mr. Snoddy's death. |
| August 16, 1994 | Change of ownership application granted. License issued in Monarch's name. |

[4]The administrators were, in fact, employees of Monarch.

From the summary judgment record, it is undisputed that Monarch actually operated the nursing home at all times pertinent to this case. Neither Medical Holdings nor Ashland was ever involved in the day-to-day operations of the nursing home. In fact, the defendants, Medical Holdings, Ashland, and Mr. Creekmore, candidly admit in various documents filed in this litigation that they never intended to operate the nursing home.

Medical Holdings, Ashland, and Mr. Creekmore filed a joint motion for summary judgment, maintaining that they could not be held liable because they did not provide any nursing care to Mr. Snoddy. Ms. Scott also filed a motion for summary judgment. A hearing on the summary judgment motions was held on May 29, 1997. Relying on the Court of Appeals' unpublished opinion in Southern Rehabilitation Specialists, Inc. v. Ashland Healthcare Center, Inc.,[5] the trial court granted the defendants' motion for summary judgment and denied Ms. Scott's motion for summary judgment. A default judgment was entered against the remaining defendants, Monarch and Red Bird Jet Corporation.

Ms. Scott filed the current appeal challenging the award of summary judgment in favor of Medical Holdings, Ashland, and Mr. Creekmore. The Court of Appeals affirmed the trial court's award of summary judgment. The intermediate court held that neither the statutes nor the regulations governing issuance of a certificate of need or license to operate a nursing home impose a duty on the certificate of need holder to operate the facility. We granted review. Our review of a trial court's award of summary judgment is de novo with no presumption of correctness, the trial court's decision being purely a question of law. Mooney v. Sneed, 30 S.W.3d 304, 306 (Tenn. 2000).

## ANALYSIS

Ms. Scott's position is that the Tennessee health care facility regulatory scheme imposes a non-delegable duty on the owner of the facility and certificate of need holder to initiate operation of the facility. After carefully reviewing the applicable statutes and rules, we agree.

### I. Implied Duty

To legally construct and open a nursing home for operation in Tennessee, it is necessary to obtain both a certificate of need and a license. Tenn. Code Ann. §§ 68-11-106(a)(1) and 68-11-204(a). Section 68-11-106(a)(1) specifically requires issuance of a certificate of need for "[t]he construction, development, or other establishment of any type of health care institution." "Health care institution" is defined to include a nursing home. Tenn. Code Ann. § 68-11-102(4)(A). In 1988, when Medical Holdings applied for and was granted its certificate of need for the Oakland facility, § 68-11-106(d)(2) addressed the criteria for certification as follows:

---

[5]Southern Rehabilitation Specialists, Inc. had a contract with Monarch to provide rehabilitation services at Oakmont. The Court of Appeals held in Southern Rehabilitation that Monarch was not an agent of Ashland and that Ashland could not be held liable for damages suffered by Southern Rehabilitation in a breach of contract action. S. Rehab. Specialists, Inc. v. Ashland Healthcare Ctr., Inc., 1997 WL 203607 (Tenn. Ct. App. Apr. 28, 1997).

> No certificate of need shall be granted unless the action proposed in the application for such certificate is necessary to provide needed health care in the area to be served, can be economically accomplished and maintained, and will contribute to the orderly development of adequate and effective health care facilities and/or services. Specific criteria for certification of need shall be prescribed by rules of the commission.

Tenn. Code Ann. § 68-11-106(d)(2) (1988). Commission Rule 0720-4-.01 further defined the three criteria: 1) need, 2) economic feasibility, and 3) contribution to the orderly development of healthcare. In its certificate of need application, Medical Holdings had to answer questions related to these three criteria, including staffing, projected charge schedules, and revenues for the Oakland facility. Review of the criteria advances the Health Facilities Commission's public policy outlined in § 68-11-103:

> It is hereby declared to be the public policy of this state that the establishment and modification of health care institutions, facilities and services shall be accomplished in a manner which is orderly, economical and consistent with the effective development of necessary and adequate means of providing for the health care of the people of Tennessee.

Tenn. Code Ann. § 68-11-103.

We find that the Health Facilities Commission's certificate of need screening procedures indicate an intent that the certificate of need holder be responsible for initiating the operation of the health care facility. The application process would not require investigation of the projected operation of the facility if it were not assumed that the certificate of need applicant would, in fact, operate the facility.

Moreover, the certificate of need application filed by Medical Holdings stated that approval was sought for the construction *and operation* of the facility. The Health Facilities Commission relied upon the representations of Medical Holdings in the application when the Health Facilities Commission approved the project. We find that Medical Holdings received its certificate of need on the premise that it would both construct and operate the Oakmont facility.

Section 68-11-204 requires that an entity obtain a license to "establish, conduct, operate or maintain" a nursing home in Tennessee. "No agency of the state . . . shall . . . issue any license to, a health care institution for any portion or activity thereof which is established, modified, relocated, changed, or resumed, or which constitutes a covered health care service, in a manner in violation of the provisions of this part." Tenn. Code Ann. § 68-11-106(c). In other words, no license for operation of a health care facility may be issued to an entity that does not hold a certificate of need. Ann Dodd, who handles licensing of nursing homes and hospitals for the Tennessee State

Department of Health, testified in her deposition that an initial facility license could only be issued to the owner listed on the certificate of need. We find that the licensing scheme requiring that the same entity obtain both the certificate of need and the license for operation impliedly imposes a duty upon the certificate of need holder to initiate operation of the health care facility.

"This Court's role in statutory interpretation is to ascertain and to effectuate the legislature's intent." Freeman v. Marco Transp. Co., 27 S.W.3d 909, 911 (Tenn. 2000). "In interpreting statutes, we are required to construe them as a whole, read them in conjunction with their surrounding parts, and view them consistently with the legislative purpose." State v. Turner, 913 S.W.2d 158, 160 (Tenn. 1995). "We must seek a reasonable construction in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." Id.

Construction of the certification and licensing statutes and rules in this case requires finding that the certificate of need holder is responsible for both the construction and initial operation of the health care facility. To hold otherwise would not give effect to the legislature's strategy for ensuring adequate, orderly, and economical health care for the citizens of Tennessee. The certificate of need and licensing procedure would be rendered meaningless. We cannot endorse such circumvention of Tennessee law.

## II. Non-Delegable Duty

Subject to certain exceptions, the transfer of a certificate of need renders it null and void. Tenn. Code Ann. § 68-11-120(a).[6] The definition of "transfer" includes leasing the facility. Tenn. Code Ann. § 68-11-120(a)(1). "A certificate of need, and the rights thereunder, for the establishment of a health care institution, the initiation of a health service, or the acquisition of major medical equipment may not be the subject of a development contract or agreement which was not fully disclosed in the application." Tenn. Code Ann. § 68-11-120(b). The certificate of need application requires disclosure of the name of the management or operating entity, if any.

The nursing home license, like the certificate of need is not transferable or assignable. Rule 1200–8–6–.01(2)(c), Tenn. Comp. R. & Regs. Rule 1200–8–6–.01(e)(1) of the Rules of the Tennessee Department of Health and Environment, Division of Health Care Facilities states in pertinent part, "For the purpose of licensing, the 'owner' of a health facility has the ultimate responsibility for the operation of the facility, including the final authority to make or control operational decisions and legal responsibility for the business management." Ms. Dodd testified that the "owner" would be the entity listed on the certificate of need. Change of ownership must be reported to the Licensing Board, and the new owner must submit a new license application. Rule 1200–8–6–.01(2)(c), Tenn. Comp. R. & Regs. Lease of the facility constitutes a change in ownership. Rule 1200–8–6–.01(2)(e)(3)(ii), Tenn. Comp. R. & Regs.

---

[6] Section 68-11-120 became effective March 31, 1993. Although the initial certificate of need in this case was awarded prior to the effective date, the amended certificate of need was issued to Ashland after this date. Also, the effective date of the lease between Ashland and Monarch was October 1, 1993.

The lack of transferability of both the certificate of need and the license is evidence that the legislature intended the certificate of need holder's duty to operate the health care facility to be non-delegable. This conclusion is supported by Attorney General Opinion No. 85-154. "Although opinions of the Attorney General are not binding on courts, government officials rely upon them for guidance; therefore, this opinion is entitled to considerable deference." State v. Black, 897 S.W.2d 680, 683 (Tenn. 1995). In Opinion No. 85-154, the Attorney General reviewed the rules and regulations governing the issuance of certificates of need to determine whether a certificate of need could be transferred from one entity to another before construction and operation of the facility. The Attorney General pointed to the specific criteria that a certificate of need applicant must meet for approval. The Attorney General opined that allowing the sale of a certificate of need before construction and operation would remove control over the criteria mandated by federal and state law, allowing abuse of the law by the health care industry to the detriment of the public. We agree with the reasoning of the Attorney General. Public policy dictates that the duty imposed upon a certificate of need holder to initiate operation of a health care facility may not be transferred to another entity.

**CONCLUSION**

We hold that the Tennessee statutes and rules governing certificates of need and licenses impliedly impose a duty upon the certificate of need holder to initiate operation of the healthcare facility. Any change in ownership or operation of the facility after it has begun operations must comply with all applicable regulations of the Health Facilities Commission and the Licensing Board. Public policy and common sense interpretation of the statutory certification and licensing scheme require that this duty be non-delegable.

We find that genuine issues of material fact exist in this case relevant to the liability of Medical Holdings, Ashland, and Mr. Creekmore, making an award of summary judgment inappropriate. See Memphis Hous. Auth. v. Thompson, 38 S.W.3d 504, 507 (Tenn. 2001) ("Summary judgment is appropriate where no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law."). We therefore reverse the judgment of the Court of Appeals, reverse the trial court's judgment, and remand this case to the trial court for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellees, Ashland Healthcare Center, Inc., Stephen W. Creekmore, and Medical Holdings, Ltd., for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE