# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 15, 2005 Session

## LAWRENCE COUNTY EDUCATION ASSOCIATION, ET AL. v. THE LAWRENCE COUNTY BOARD OF EDUCATION, ET AL.

### Appeal from the Chancery Court for Lawrence County
No. 11114-02     Robert L. Jones, Chancellor

---

### No. M2004-02224-COA-R3-CV - Filed November 28, 2005

---

Basketball coach and employee association appeal trial court's refusal to order coach reinstated as a method to enforce arbitration decision under Master Contract between school board and association. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, JR., JJ., joined.

Richard L. Colbert, J. Christopher Anderson, Nashville, Tennessee, for the appellants, Lawrence County Education Association and Jerry Taylor.

Paul B. Plant, J. Christopher Williams, Lawrenceburg, Tennessee, for the appellees, the Lawrence County Board of Education and Larry Morrow, Director of Lawrence County Schools.

### OPINION

The facts of this matter are not in dispute. Jerry Taylor is a tenured teacher at Loretto High School ("Loretto") employed by the Lawrence County Board of Education ("Board"). For several years, Mr. Taylor also coached the girls' basketball team at Loretto producing an outstanding winning record. This appeal is about his coaching appointment only. Mr. Taylor's employment, tenure status, and teaching responsibilities are not at issue in this lawsuit.

During the spring of 2001, while Mr. Taylor was the coach, some of the players' parents approached the principal of Loretto and some Board members to complain about Mr. Taylor's behavior. A meeting was held in May of 2001 with the players, parents, the principal, and the Board's attorney to discuss the complaints. Mr. Taylor was aware of the meeting but was not invited to attend. The complaints focused on three areas; (1) that Mr. Taylor made inappropriate remarks

and used profanity around the players, (2) that Mr. Taylor's mistreatment of a player denied her a chance at a scholarship, and (3) on two occasions Mr. Taylor made racial slurs. Apparently, petitions were also circulated in the community making similar allegations. After discussing the perceived problem, Loretto's principal and the Lawrence County School Director ("Director") met with Mr. Taylor in July of 2001 to present him with the option to enter into an agreement governing his future conduct as coach. In exchange for agreeing to comply with its terms, Mr. Taylor could continue to coach girls' basketball at Loretto. Mr. Taylor declined to enter into this agreement. Thereafter, the principal and Director continued to receive complaints from the community about Mr. Taylor. The principal then notified Mr. Taylor that he would not be assigned as the girls' basketball coach for the upcoming 2001-02 school year. Instead, the principal appointed Christie Green as the Loretto girls' basketball coach.

Mr. Taylor filed a grievance objecting to his removal as coach under the collective bargaining agreement between the Board and the Lawrence County Education Association ("Master Contract").[1] Mr. Taylor's grievance was not successful in the intermediate steps so, pursuant to the Master Contract, the matter was ultimately presented to an arbitrator who rendered a decision on June 17, 2002. Before the arbitrator, the Director based his decision to remove Mr. Taylor as the basketball coach because Mr. Taylor generated controversy, used profanity in the players' presence, made racial slurs in the players' presence, and was the subject of parental complaints. The arbitrator made the following findings:

1)      the Master Contract covers coaching assignments;

2)      any effort to relieve Mr. Taylor of the coaching assignment must comply with the Master Contract because the assignment as the girls' basketball coach constituted a "professional advantage" and the relinquishment of the position under these circumstances constituted "discipline";

3)      the Master Contract required an investigation with Mr. Taylor's participation, inclusion of material in Mr. Taylor's personnel file forming the basis of any adverse action, and a written statement of reasons for decisions made in the grievance process;

4)      the Board failed to comply with requirements of the Master Contract listed above and the failures to comply with these procedural requirements prejudiced Mr. Taylor; and

5)      the decision to remove Mr. Taylor as the girls' basketball coach was arbitrary and capricious because either the proof was lacking or loss of the coaching position was disproportionate to the offense.

---

[1] The Master Contract made an exhibit extends from July 1, 2000 to June 30, 2003.

The arbitrator first awarded Mr. Taylor the coaching supplement for the 2001-2002 school year. With regard to the 2002-2003 school year, the arbitrator's order provided that: (1) the Director is to make the girls' basketball coach assignment, (2) the Director is to proceed as though Mr. Taylor is the incumbent coach for the coming year, and (3) the Director is to eliminate from consideration the reasons given for reassigning Mr. Taylor in 2001-02. The arbitrator recognized that all parties agreed that a coaching position was not tenured and that formulating a remedy regarding the coach's return was difficult given the discretion vested with the Director in making this decision. The arbitrator recognized that he could not "tie the hands" of the Director. The arbitrator concluded his decision by finding:

> It is obvious that the most likely decision the [Director] will reach is to assign the grievant to serve as basketball coach again. If he does not do so, the probability that another grievance will be filed is high, and the Board clearly understands at this point the amount of time, energy and funds that would be involved. Nonetheless, the Arbitrator does not believe he has the power to recommend to the Board that the Board order the grievant reassigned, without the participation of the [Director] as the primary moving party. The Master Contract places that responsibility squarely on the [Director]'s shoulders.

The Board accepted and agreed to be bound by the arbitrator's decision on June 18, 2002. Given this acceptance, the arbitrator's decision is not a subject of this appeal. Thereafter, the Director notified the principal of Loretto that after having complied with the conditions of the arbitrator's decision, it was his decision "for the most efficient operation of Loretto High School," that Christine Green be appointed as the girls' basketball coach for the 2002-03 school year.

Thereafter Mr. Taylor and the Association sued the Board and Director claiming that the Director acted in violation of the arbitration decision when he appointed Ms. Green as the girls' basketball coach. Essentially, the plaintiffs asked the trial court to order that Mr. Taylor be reinstated as the girls' basketball coach at Loretta.

The parties filed cross-motions for summary judgment. The trial court issued its order on September 3, 2004.[2] The trial court agreed with Mr. Taylor that the Director's decision to hire Ms. Green as the 2002-03 girls' basketball coach was "an obvious failure to follow the letter and spirit of the arbitration decision."[3] For that reason, the trial court awarded Mr. Taylor the coaching supplement for the 2002-03 season he would have received as the girls' basketball coach. The trial

---

[2] Both the 2002-03 and 2003-04 school years were over in September of 2004 when the trial court issued its order on Mr. Taylor's suit complaining of actions taken in the 2002-03 school year.

[3] The basis for this conclusion was the director's testimony that, although he followed the arbitrator's decision by considering Mr. Taylor to be the incumbent coach and disregarded the 2001 complaints, he considered that Ms. Green had in fact been the coach for a year and, in his opinion, Loretto "would have a better future year with her than returning to the controversy surrounding Jerry Taylor."

court declined to address school years past 2002-03 since it found the arbitrator's decision and the Board's adoption of it did not extend beyond the 2002-03 school year. The trial court found:

> It is clear that the arbitrator and the Board in adopting his decision were deciding issues only for the 2002-03 year and that an additional grievance would be necessary to preserve any rights beyond that year.

For that reason, the trial court declined to order that Mr. Taylor be appointed the girls' basketball coach for the then underway 2004-05 school year. Mr. Taylor and the Association appealed and argue that the trial court was in error when it restricted the effect of the arbitrator's decision to the 2002-03 school year and that the court must enforce the arbitrator's decision by ordering the Board and Director to reinstate Mr. Taylor as the girls' basketball coach at Loretto.

## I. STANDARD OF REVIEW

Our review of a trial court's summary judgment is *de novo* with no presumption of correctness since the trial court's decision is a question of law. *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 285 (Tenn. 2001). Summary judgment should be granted only when the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *Webber v. State Farm Mutual Automobile Insurance Company*, 49 S.W.3d 265, 269 (Tenn. 2001). We must consider the evidence in the light most favorable to the non-moving party, and we must resolve all inferences in the non-moving party's favor. *Doe v. HCA Health Services, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001).

## II. SCHOOL SYSTEM PERSONNEL DECISIONS

The director of schools has the power to employ, transfer, and discharge employees of the school system. Tenn. Code Ann. § 49-2-301(b)(1)(EE). While a certificated employee may gain tenure as a teacher, he or she cannot become tenured in an administrative or supervisory position. Tenn. Code Ann. § 49-5-501(11)(A). *Pullum v. Smallridge*, 652 S.W.2d 338, 340 (Tenn. 1983). Consequently, "[r]elieving a teacher-coach of his coaching duties only" is a transfer within the system governed by Tenn. Code Ann. § 49-5-510. *White v. Banks*, 614 S.W.2d 331, 334 (Tenn. 1981). Tenn. Code Ann. § 49-5-510 clearly places the statutory responsibility to make transfers with the directors of schools:

> The director of schools, when necessary to the efficient operation of the school system, may transfer a teacher from one location to another within the school system, or from one type of work to another for which the teacher is qualified and licensed: provided, that transfers shall be acted upon in accordance with board policy and any locally negotiated agreement.

The statute authorizes the director to make such transfers, including relieving a teacher-coach of his or her coaching duties, for the efficient operation of the school system, which is the reason

-4-

given for the director's decision not to reappoint Mr. Taylor coach for the 2002-03 school year. Judicial review of such transfers have historically been limited to determinations of whether the action was arbitrary and capricious or motivated by political or other improper motives. *Pullum*, 652 S.W.2d at 340-41; *McKenna v. Sumner County Board of Education*, 574 S.W.2d 527, 534 (Tenn. 1978). Courts presume the actions of a board or a director "are not arbitrary or capricious, but are reasonable and fair unless there is clear evidence to the contrary." *Mitchell v. Garrett*, 510 S.W.2d 894, 898 (Tenn. 1974).[4]

Both the provision on the director's authority to transfer employees and the transfer provision applicable to teachers contain language that requires that such transfers be consistent with any locally negotiated agreement. The locally negotiated agreements referred to in these statutes are those adopted pursuant to Tenn. Code Ann. § 49-5-601 *et. seq.*, the Education Professional Negotiations Act ("Negotiations Act"). The Act authorizes recognition of a professional employees' organization as the exclusive representative of all professional employees of a board of education for the purpose of negotiating with the board; negotiation on specified conditions of employment; and the preparation and execution of a memorandum of understanding reflecting agreements reached in the negotiation. Tenn. Code Ann. §§ 49-5-605, -606, -611, and -612. The Master Contract that was the subject of the arbitration herein is such a locally negotiated agreement.

In the Negotiations Act, the General Assembly chose to limit the conditions of employment subject to required negotiation, Tenn. Code Ann. § 49-5-611(a),[5] to limit the scope of any resulting agreement, Tenn. Code Ann. § 49-5-612(a), and to specifically retain the assignment of duties to local school system officials established elsewhere. Tenn. Code Ann. § 49-5-604(a).[6] Because of these and other provisions and authority, this court has previously determined that any part, or interpretation, of an agreement that purported to remove authority from the director of schools to make employee assignments and transfers was beyond the legally permissible scope of such agreements. *Marion County Board of Education v. Marion County Education Association*, 86 S.W.3d 202, 214 (Tenn. Ct. App. 2001). Any agreement which "envisions substitution of the judgment of an arbitrator for discretion of the director of schools" regarding transfers is not authorized by law. *Id.*

---

[4] This is clearly not the standard applied by the arbitrator, who found that a decision is arbitrary and capricious if "the decision would seem distinctly surprising to a reasonable person, in the absence of substantial justification." Whether or not the arbitrator's decision is correct or based on applicable legal principles is not before us in this appeal.

[5] Tenn. Code Ann. § 49-5-611(a) provides that the board of education and the recognized professional employees' organization shall negotiate in good faith the following conditions of employment: (1) salaries or wages; (2) grievance procedures; (3) insurance; (4) fringe benefits; (5) working conditions; (6) leave; (7) student discipline procedures; and (8) payroll deductions.

[6] "Those rights and responsibilities of boards of education, superintendents and professional employees as contained in this title are not statutorily modified or repealed by this part." Tenn. Code Ann. § 49-5-604(a).

# III. ANALYSIS

The correctness or enforceability of the arbitrator's decision is not before us since it was accepted and agreed to by the Board.[7] As the trial court clearly and correctly framed the issue, the question is whether the arbitrator's decision placing significant restrictions on the Director's discretion survived the 2002-03 school year. After deciding that it did not extend beyond 2002-03, the trial court found the Director failed to comply with the arbitrator's decision in 2002-03 school year and awarded Mr. Taylor money damages.[8]

We agree with the trial court that the arbitrator's decision by its express terms did not extend beyond the 2002-03 school year. The language quoted earlier from the arbitrator's decision clearly indicated that its reach extended only to the 2002-03 school year and, even then, it was expected that Mr. Taylor would file another grievance if he was dissatisfied. In addition, the arbitrator's decision expressly placed limitations on the Director "in deciding whether to assign the grievant to be head basketball coach for the coming year [2002-03]." If Mr. Taylor objected to the Director's failure to appoint him as the coach for subsequent years, then he should be expected to follow whatever grievance procedure was in place affecting that position at that time. Therefore, the trial court correctly declined to order that Mr. Taylor be named as coach.

The trial court concluded that Mr. Taylor and the Association had not established any rights of Mr. Taylor with regard to a coaching assignment for any year past 2002-03. We agree. Consequently, the Board and Mr. Morrow, the Director, were entitled to summary judgment. Because he had no claim beyond that created, if at all, by the Board's approval of the arbitration decision, Mr. Taylor was not entitled to any additional relief, be it reinstatement or additional damages for the pay differential.

Even if the arbitrator's decision extended beyond the 2002-03 school year, the trial court's decision would nevertheless still be correct as to reinstatement. The arbitrator clearly understood that an arbitrator was powerless to make appointment decisions. Such authority rests with the director of schools and cannot be delegated through an agreement to an arbitrator. "It is clear . . . that the legislature did not intend by adoption of the Negotiations Act to alter the assignment of duties made elsewhere in statutes pertaining to local administration of schools." *Marion County Board of Education*, 86 S.W.3d at 208.

---

[7]Similarly, the trial court stated that it need not decide whether the arbitrator was correct in concluding that Mr. Taylor's coaching assignment was covered by the Master Contract or that Mr. Taylor had a right to file a grievance as to his removal. As the trial court said, the Board accepted and agreed to be bound by the arbitrator's decision. The Board, however, does not have statutory authority to transfer employees.

[8]On appeal, the Board and Director do not challenge the trial court's finding or remedy as to this issue. The trial court found that "even if the Master Contract did not otherwise control this situation, the board made it applicable through the arbitrator's decision for the assignment of the girls' head basketball coach for the 2002/2003 school year." We note this court has questioned whether a local board of education, through a negotiated agreement, can place limitations on a non-delegable duty assigned by statute to the director of schools. *See Marion County Board of Education*, 86 S.W.3d at 211-13.

Since the law does not provide an arbitrator with authority to select coaches under a collective agreement, one may not avoid this limitation of authority by seeking to achieve the same result through enforcement of an arbitrator's decision. In other words, the courts, including this Court, will not usurp the discretion of the director of schools in selecting coaches under the guise of enforcing a Master Contract.

For these reasons, the judgment of the trial court is affirmed and costs are assessed against the appellants, Lawrence County Education Association and Mr. Jerry Taylor.

_____

PATRICIA J. COTTRELL, JUDGE