IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 10, 2008 Session

# KENNETH PETTITT, ET AL. v. CURTIS WILLIAMSON
# d/b/a WILLIAMSON CONSTRUCTION, ET AL.

**Appeal from the Circuit Court for Coffee County**
**No. 34212      John W. Rollins, Judge**

---

**No. M2007-01530-COA-R3-CV - Filed July 28, 2008**

---

Finding that the home purchasers created genuine issues of material fact as to whether the defendant facilitated the home sale for the contractor/seller, we reverse the trial court's grant of summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS. JJ., joined.

G. Kline Preston, Nashville, Tennessee, for the appellants, Kenneth Pettitt and wife Cathy Pettitt.

Derrick Allen Free, Robyn Beale Williams, Nashville, Tennessee, for the appellees, Freda K. Jones, and Coffee County Realty and Auction, LLC.

## OPINION

Kenneth and Cathy Pettitt (the "Pettitts") sued licensed real estate agent Freda Jones and her company, Coffee County Realty and Auction, LLC, arising from the Pettitts purchase of their home from Curtis Williamson of Williamson Construction (collectively referred to as "Williamson"). The Pettitts purchased a home located in Fredonia Village, in Coffee County, from Mr. Williamson in January of 2005. According to the Pettitts' complaint, Ms. Jones participated with Williamson in misrepresenting the home site and failing to disclose water and environmental problems with the site.[1]  In addition to claims for misrepresentation, fraudulent inducement, and violations of the Tennessee Consumer Protection Act, ("TCPA"), Tenn. Code Ann. § 47-18-101 *et seq.*, the Pettitts also claim Ms. Jones violated the duties in Tenn. Code Ann. § 62-13-403 required of a licensed real

---

[1]The Pettitts also sued Mr. Williamson and his company, Williamson Construction, but their action against the contractor is not part of this appeal.

estate agent. Tenn. Code Ann. § 62-13-403(2) provides that a licensee who provides real estate services in a real estate transaction, among other things, owes a duty to the parties in the transaction to disclose adverse facts of which the licensee has actual notice or knowledge. According to the Pettitts, Ms. Jones met the statutory definition of a "facilitator" since she assisted Williamson in the transaction without being a representative of either party.[2] Tenn. Code Ann. § 62-13-102(8). Consequently, the Pettitts claim Ms. Jones was under a duty to disclose the problems with the property purchased from Mr. Williamson.[3]

Ms. Jones filed a motion for summary judgment, together with two of her affidavits. Her affidavits provide evidence regarding whether Ms. Jones or facilitated the transaction between them. According to Ms. Jones, she made no representations about the site and had no role in the home purchase transaction so that she had no duty to disclose any problems. According to Ms. Jones' affidavits, she was not an agent for the Pettitts or for Mr. Williamson in the home purchase transaction, nor did she act as a facilitator in the transaction. Consequently, she received no commission from the sale of the house.

According to Ms. Jones, she responded to a call from the Pettitts to show them a home they had already identified in Fredonia Village. While the Pettitts were not interested in that particular home, Ms. Jones identified its builder since they liked its workmanship. Ms. Jones informed them that Mr. Williamson was the builder. According to Ms. Jones' affidavit, from that point the Pettitts contacted Mr. Williamson, and Ms. Jones was not involved further with the transaction that ensued between the Pettitts and Mr. Williamson in the purchase of the home he built for them in Fredonia Village. In his Amended Answer, Mr. Williamson agreed that Ms. Jones did not represent Williamson in this transaction.

Mrs. Pettitt's affidavit states that Ms. Jones, in effect, encouraged them to contact Mr. Williamson and that Mr. Williamson apparently came over that day to the subdivision site to discuss other lots with them. According to Ms. Pettitt, Ms. Jones pointed out some lots in Fredonia Village unsuited for construction because they would not "perk." According to Mrs. Pettitt, Ms. Jones told them nothing about the lot they ultimately purchased except that she owned it.[4] According to Mrs.

---

[2]While the Pettitts apparently maintained before the trial court that Ms. Jones was Williamson's agent, on appeal the Pettitts maintain only that Ms. Jones was a facilitator. The Pettitts acknowledge that Williamson and Ms. Jones "do not appear to have been parties to a specific written agreement" so under Tenn. Code Ann. § 62-13-401, which requires a written agreement to create an agency relationship, Ms. Jones was not Williamson's agent.

[3]The Pettitts requested permission to amend their complaint after the parties filed their answers. The proposed amendment added the allegation that Ms. Jones violated the standard of care described in Tenn. Code Ann. § 66-5-206. That motion apparently was not ruled upon. The Pettitts do not attempt to rely on Tenn. Code Ann. § 66-5-206 on appeal.

[4]Apparently, Ms. Jones did not own the lot ultimately purchased by the Pettitts because there are no allegations that Ms. Jones owned the lot ultimately purchased by the Pettitts or that as owner of the lot Ms. Jones had any disclosure responsibility - only as an agent. In their brief on appeal, the Pettitts acknowledge that they purchased the lot from Mr.
(continued...)

Pettitt, Ms. Jones was seen on the lot several times thereafter. In addition, Billy McDowell "on behalf of Curtis Williamson," as described in Mrs. Pettitt's affidavit, told the Pettitts to deal with Ms. Jones.[5] The Pettitts pointed out that Ms. Jones represents Mr. Williamson in other transactions and that Ms. Jones picked up the septic tank permit for Mr. Williamson for the house at issue.

Ms. Jones also acknowledged that as a favor to Mr. Williamson she picked up the septic tank permit, which she does for several builders since her office is nearby.

On June 8, 2007, the trial court granted Ms. Jones and her company summary judgment and designated the order as a final judgment. The Pettitts appealed.

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *BellSouth Advertising & Publishing Co. v. Johnson,* 100 S.W.3d 202, 205 (Tenn. 2003); *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 285 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). We review the summary judgment decision as a question of law. *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 437 (Tenn.1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.1997). Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004); *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 88 (Tenn. 2000).

The requirements for the grant of summary judgment are that the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Blair*, 130 S.W.3d at 764; *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). Consequently, summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion - that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Staples*, 15 S.W.3d at 88.

In our review, we must consider the evidence presented at the summary judgment stage in the light most favorable to the non-moving party, and we must afford that party all reasonable inferences. *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001). We must determine first whether factual disputes exist and, if so, whether the disputed fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial.

---

[4](...continued)
Williamson.

[5]While Mr. McDowell is referenced in Mrs. Pettitt's affidavit, he is not mentioned elsewhere. The Pettitts do not rely on this part of her affidavit on appeal to show Ms. Jones was acting on behalf of Mr. Williamson. The Pettitts' affidavit fails to describe Mr. McDowell's relationship to Mr. Williamson.

*Byrd*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). "[I]f there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied." *Byrd*, 847 S.W.2d at 211.

To meet the requirements for summary judgment, a defendant moving for summary judgment must, in its filings supporting the motion, either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *Blair,* 130 S.W.3d at 767; *Staples*, 15 S.W.3d at 88. If the moving party fails to meet this burden, the burden to come forward with probative evidence establishing the existence of a genuine issue for trial does not shift to the non-moving party, and the motion must be denied. *Staples*, 15 S.W.3d at 88-89.

If, however, the moving party successfully negates a claimed basis for the action or establishes an affirmative defense, the non-moving party may not simply rest upon the pleadings. *Staples*, 15 S.W.3d at 89. In that situation, the non-moving party has the burden of pointing out, rehabilitating, or providing new evidence to create a factual dispute as to the material element in dispute. *Staples*, 15 S.W.3d at 89; *Rains v. Bend of the River*, 124 S.W.3d 580, 587-88 (Tenn. Ct. App. 2003).

Ms. Jones came forward with proof that she did not represent any party to this transaction, was not paid by any party to the transaction, and played no role in the transaction. Except for introducing the parties and picking up a permit as a courtesy, Ms. Jones' affidavit shows no other role in the Pettitts' purchase of their home from Mr. Williamson. Consequently, Ms. Jones was successful in negating essential elements the Pettitts' claim.

The Pettitts offered proof that Ms. Jones referred them to Williamson, was frequently seen on the site, and picked up a permit for Mr. Williamson. This proof, in and of itself, does not create genuine issues of material fact as to Ms. Jones' role in the transaction. However, sworn testimony by Curtis Williamson about Ms. Jones' representation of him and his company does create genuine issues. The Pettitts introduced deposition testimony given by Mr. Williamson in an unrelated matter taken in April of 2006, a little over a year after Mr. Williamson sold the Pettitts the home in question. In his deposition testimony, Mr. Williamson explained that Ms. Jones' uncle owned lots in Fredonia Village, that Ms. Jones told him about the lots, and that Mr. Williamson purchased the lots from Ms. Jones' uncle. The home shown to the Pettitts by Ms. Jones and the lot with the home built by Williamson purchased by the Pettitts were both in Fredonia Village. Mr. Williamson gave the following answers in the deposition:

> Q.      . . .  Did she [Ms. Jones] encourage you to come to Coffee County, or did you inquire to her abut potential projects in Coffee County to get involved in?

> A.      It just happened that it - - her uncle had those lots for sale in Fredonia Village, and she told me about those, and I bought them from him.

Q. Okay. And has Ms. Jones represented you in all of your real estate transactions?

A. That's correct.

Q. Okay. Specifically, all your real estate transactions in Coffee County?

A. Yes.

Q Okay. So, you have a contract with her or an agreement with her that she is to promote the selling of your homes?

A. Right. Yes, sir.

In his first Answer filed in this case, Mr. Williamson admitted that Ms. Jones represented him in the Pettitt transaction, but later filed an Amended Answer denying her involvement in this transaction.

Ms. Jones' claims that Mr. Williamson's apparent contradictory statements "cancel each other out." It is true that Tennessee recognizes a "cancellation rule" for contradictory statements, but it does not apply in this case. As Judge Koch discussed in *Church v. Perales*,

> Tennessee follows the rule that contradictory statements by the same witness regarding a single fact cancel each other out. *See State v. Matthews*, 888 S.W.2d 446, 449 (Tenn. Crim App. 1993); *Gambill v. Middle Tenn. Med. Ctr.*, 751 S.W.2d at 149-50. The Tennessee Supreme Court has characterized mutually contradictory statements by the same witness as "no evidence" of the fact sought to be proved. *See Johnston v. Cincinnati N.O. & T.P. Ry.*, 146 Tenn. 135, 160, 240 S.W. 429, 436 (1922). However, in order to be disregarded under the so-called cancellation rule, the allegedly contradictory statements must be unexplained and neither statement can be corroborated by other competent evidence. *See State v. Matthews*, 888 S.W.2d at 450; *Gambill v. Middle Tenn. Med. Ctr.*, 751 S.W.2d at 151. When the cancellation rule is invoked at the summary judgment stage to challenge evidence opposing the motion, the courts must view the challenged evidence in the light most favorable to the opponent of the motion.

39 S.W.3d 149, 169-70 (Tenn. Ct. App. 2000).

Basically, this rule prevents the bare fact of contradictory statements about a specific fact from creating an issue of fact precluding summary judgment. The proof offered by the Pettitts, however, consists of more than a simple contradictory statement. First, the testimony of Mr. Williamson supporting the Pettitts' theory is sworn, while his denial is part of his answer which was not under oath. Second, there is proof that supports Mr. Williamson's deposition testimony such as

Ms. Jones' recommendation of Mr. Williamson to the Pettitts, her presence on the lot in question during construction, and her act of picking up the permit. Third, in his original Answer Mr. Williamson admitted that Ms. Jones represented him in this transaction and then recanted in his Amended Answer. All of these circumstances may not prove a relationship with Mr. Williamson that created duties for Ms. Jones, but together with Mr. Williamson's deposition testimony, they create a genuine issue of material fact as to whether Ms. Jones was a facilitator in this transaction.

While Ms. Jones and Mr. Williamson may deny her involvement in the transaction, the sworn deposition testimony of Mr. Williamson taken after this transaction occurred that discusses Ms. Jones' standing commitment to assist Mr. Williamson in Coffee County creates a factual issue about whether and to what extent Ms. Jones may have been involved in this particular transaction.

Finally, Ms. Jones claims that regardless of whether she was involved in the transaction, she is entitled to dismissal of the misrepresentation, fraudulent inducement and TCPA claims since the only representation the Pettitts include in their affidavits is that Ms. Jones told them that Mr. Williamson "did good work, provided many upgrades, and was a reputable builder." However, as we interpret it, the Pettits' claims are largely based on what she did not say, as opposed to what she may have said. They allege she had a duty to disclose and did not. Since all their claims rest on a duty created by Ms. Jones' relationship to the transaction, our conclusion that material factual disputes exist regarding that transaction makes summary judgment on those claims inappropriate.

Additionally, as discussed earlier, in order to be successful on a motion for summary judgment, Ms. Jones' affidavit must negate an essential element of plaintiffs' claims. Ms. Jones' affidavits, however, did not address any aspect of the misrepresentation, fraudulent inducement or TCPA claims other than to say she was not involved.

Having established that there are genuine issues of material fact, the grant of summary judgment to Freda Jones is reversed. Cost of this appeal are taxed to Ms. Freda Jones, and Coffee County Realty and Auction, LLC, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, P.J., M.S.

-6-