IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 9, 2008 Session

## WILLIAM A. BAKER, II v. HOMER J. JOHNSON, SR.

**Appeal from the Circuit Court for Davidson County**
**No. 05C-2305     Thomas W. Brothers, Judge**

**No. M2007-01992-COA-R3-CV - Filed January 23, 2009**

Shortly after the parties entered into a contract for the sale of a piece of real estate, the seller refused to transfer possession and informed the buyer that he did not intend to close on the property. The buyer filed suit for breach of contract and demanded specific performance. The seller denied that the contract of sale was valid or enforceable and presented a number of different and inconsistent allegations to support his contention. The trial court granted summary judgment to the buyer. We affirm.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Randall Pierce, Mt. Juliet, Tennessee, for the appellant, Homer J. Johnson, Sr.

Jeffrey Spark, Nashville, Tennessee, for the appellee, William A. Baker, II.

### OPINION

### I. A Real Estate Contract

On July 26, 2005, Homer J. Johnson Sr. (Seller) and William A. Baker II (Buyer) entered into a Purchase and Sale Agreement on a residential lot and rental home located at 2016 12th Avenue South in Nashville. The rental home was in need of repair. The contract recited a price of $112,000, and stated that the property was being purchased "as-is." The only contingency set out in the contract made the buyer's duty to close dependent on his ability to obtain adequate financing. The

agreement declared that in the event of a breach leading to legal action for its enforcement, the prevailing party was entitled to recover all resulting costs, including reasonable attorney fees.[1]

The contract provided that possession of the property would pass to the buyer at 2:00 p.m. on July 26, 2005, and that closing would take place on October 28, 2005. Both Homer Johnson and his son Marvin were present at the execution of the contract, and both read it before Homer Johnson signed it. On July 27, 2005, the day after execution, Marvin Johnson called Mr. Baker and told him that his father would not transfer possession of the property and that he would not close on the contract.

On August 3, 2005, William Baker filed a complaint in the Davidson County Circuit Court for breach of contract, asking the court to grant him specific performance. A copy of the signed Purchase and Sale Agreement was attached as an exhibit to the complaint. Mr. Johnson filed a *pro se* answer, in which he acknowledged entering into negotiations about a purchase and sale agreement with Mr. Baker, but denied that the document executed on July 26, 2005 was a valid contract.

The answer alleged that Mr. Johnson had informed Mr. Baker that there was an existing contract of sale on the property between Marvin Johnson and a woman named Denita Williams, and that termination of that contract would have to occur before the Purchase and Sale Agreement would become effective. Mr. Johnson also claimed that he had informed Mr. Baker that the Purchase and Sale Agreement could not be finalized if the appraisal value of the property increased to more than $130,000, because in such an event the price would have to be renegotiated.

Mr. Johnson's deposition was taken on May 25, 2006. Under questioning about the allegations in his answer as to a contract of sale between Marvin Johnson and Denita Williams, he testified that Marvin Johnson was under contract to renovate the property and that Denita Williams was going to rent it, but he acknowledged that there was no contract of sale. Mr. Johnson also suggested that the Purchase and Sale Agreement was not valid because his wife had not signed it and that they "sign all agreements and transactions together." He was then shown the deed from his own purchase of the property in 2002, on which his name alone appeared as grantee.[2] Mr Johnson was also shown the Purchase and Sale Agreement that Mr. Baker had attached to the complaint. Mr. Johnson identified it as the contract he had signed, but continued to insist that it was meant to be a temporary agreement, by which we believe him to have meant that it was a tentative agreement.

---

[1]The contract was executed on a standard seven-page printed form copyrighted by the Tennessee Association of Realtors. The form contained blank lines for the parties to enter the specific terms of the contract and for the necessary signatures.

[2]The deed recited that the transfer was from "Johari Holden Bankston, unmarried" to "Homer G. Johnson, married." At one point in the deposition, Mr. Johnson tried to bring the validity of the deed into question by noting that his name was actually Homer J. Johnson, Jr. After a great deal of questioning, he finally acknowledged that he did in fact buy the property from Ms. Bankston on August 14, 2002.

On May 25, 2007, Mr. Baker filed a motion for summary judgment. On the same date, he filed an affidavit in which he swore, among other things, that the contract he had attached to his complaint was the very document that Mr. Johnson had signed two years earlier. He also filed a statement of undisputed material facts. *See* Tenn. R. Civ. P. 56.03.

Mr. Johnson then filed a response to Mr. Baker's statement of undisputed material facts and a memorandum in opposition to the motion for summary judgment. In those filings, he raised new allegations to support his contention that the Purchase and Sale Agreement he signed on July 26, 2005 was not a valid contract of sale. He claimed that he had made a counter-offer which Mr. Baker rejected, that Mr. Baker had failed to provide him with earnest money, and that the contract expired before the parties reached a meeting of the minds.

In support of his allegations, he submitted a new version of the Purchase and Sale Agreement which had not been presented or alluded to during discovery or as part of any prior court filings. His version was a duplicate of the copy that had been submitted by Mr. Baker and identified in deposition by Mr. Johnson as the one he had signed, except that it included some hand-written insertions in places that had been left blank in the original document.[3]

Mr. Johnson also submitted a document purporting to be his alleged counter-offer to Mr. Baker. The document recited a price of $200,000, contingent upon payment by the buyer of $5,000 in earnest money and upon a commitment in writing by Marvin Johnson "to terminate his purchase contract of above premises." Like his new version of the Purchase and Sale Agreement, this document was not mentioned during any prior proceedings in this case. The signature line included Mr. Johnson's signature and recited a date of July 26, 2005 and a time of 4:30 p.m. Mr. Johnson did not include an affidavit testifying to the authenticity of either of the documents he submitted, as is required by Tenn. R. Civ. P. 56.06.

The summary judgment motion was heard on July 27, 2007. Mr. Johnson appeared *pro se.* He again argued that he believed the Purchase and Sale Agreement to be a temporary agreement. At the conclusion of argument, the trial court declared that it was granting summary judgment to Mr. Baker. The final order memorializing the court's decision was filed on August 2, 2007.

---

[3]Paragraph 3 of the agreement dealt with earnest money, and included a line for an amount to be filled in. That line had been left blank in the original document and a large X had been drawn across the face of the paragraph. In Mr. Johnson's version, the amount of $5,000 was written in the blank, while the same X remained in place.

The last page of the contract included several boxes for signatures. The printed portion of one box reads, "The foregoing offer is ACCEPTED," followed by places for date, time and signature. Mr. Johnson's signature is found in that box on both versions of the document. Below it, the printed portion of another box reads, "The Sellers have COUNTERED this offer subject to the terms of the attached Counter offer(s) or the changes made herein," followed again by places for date, time and signature. That box was left blank in the original document, but Mr. Johnson's signature is found there in the version he submitted.

Among other things, the order stated that "[t]he court finds that the Defendant is not credible, based upon the contradictory statements made in his answer, at his deposition and in the response filed to this motion." The court also found that Mr. Johnson had presented fabricated evidence. Mr. Johnson was ordered to execute all the documents necessary to transfer the property to Mr. Baker upon tender of the purchase price of $112,000, and to pay Mr. Baker $9,183.50 as compensation for reasonable attorney fees and expenses. This appeal followed.

## II. Analysis

The requirements for a grant of summary judgment are well-known. Such a judgment may be granted only when the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004); *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). Further, the trial court must consider the evidence in the light most favorable to the non-moving party, and must afford that party all reasonable inferences. *Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 307 (Tenn. 2008); *Draper v. Westerfield,* 181 S.W.3d 283, 288 (Tenn. 2005); *Doe v. HCA Health Services, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Housing Authority. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001).

A corollary of the above requirements is that they generally preclude the trial court from making determinations of witness credibility. *Morris v. Columbia Construction Co.*, 109 S.W.3d 314, 316 (Tenn. Ct. App. 2003) (citing *Poole v. First National Bank of Smyrna*, 196 S.W.2d 563, 568 (Tenn. Ct. App. 1946). "Issues of witness credibility present issues of fact and must be construed in favor of a nonmoving party when considering a motion for summary judgment." A related corollary is that the court is not entitled to weigh the evidence when evaluating a motion for summary judgment. *Mike v. Po Group, Inc.,* 937 S.W.2d 790, 792 (Tenn. 1996); *Bellamy v. Federal Express Corp.*, 749 S.W.2d 31, 33 (Tenn. 1988); *Byrd v. Hall*, 847 S.W.2d at 211; *Burgess v. Harley,* 934 S.W.2d 58, 66 (Tenn. Ct. App. 1996).

Mr. Johnson's attorney[4] seizes upon these principles to attack the trial court's ruling on two fronts. First, he argues that the court's statement that Mr. Johnson was not credible shows that it based its summary judgment decision upon an impermissible determination of witness credibility. Second, he argues that by designating the contract presented with Mr. Baker's complaint as the original true document, and preferring it to the one presented later by Mr. Johnson, the court impermissibly weighed the evidence.

Before addressing these arguments, we note that no presumption of correctness attaches to a trial court's grant of summary judgment. *Draper v. Westerfield,* 181 S.W.3d at 288; *BellSouth Advertising & Publishing Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003); *Scott v. Ashland*

---

[4]Although Mr. Johnson acted *pro se* during the trial court proceedings, he retained an attorney for this appeal.

*Healthcare Ctr., Inc.*, 49 S.W.3d 281, 284 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004); *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 88 (Tenn. 2000).

Turning to the final order in this case, we note that the court's comment as to Mr. Johnson's credibility was part of a broader discussion of the defects in the proof he presented. The court did not base its finding of lack of credibility upon observation of Mr. Johnson's demeanor, but "upon the contradictory statements made in his answer, at his deposition and in the response filed to this motion." The court correctly noted that Mr. Johnson had the opportunity to assert the existence of any counter-offer in his answer, at his deposition, or in any discovery responses, but that he failed to do so until after Mr. Baker filed his motion for summary judgment.

But even more damaging to Mr. Johnson's case than this inexplicable delay was his reliance on different and contradictory allegations as to matters about which he himself should have had direct knowledge. In his answer, he alleged that a separate contract of sale between his son and Denita William rendered the Purchase and Sale Agreement temporary, even though Marvin Johnson had no ownership interest in the property. Then in his deposition he admitted that no such separate contract of sale existed. In his answer he also alleged that he informed the buyer that the contract would not be finalized if the appraisal of the property increased beyond $130,000. However, in his response to the buyer's summary judgment motion he abandoned that allegation, and he insisted instead that he had made a counter-offer which the buyer did not accept.

Such contradictory assertions not only destroy the credibility of the person making them, but they force the trial court to disregard them as a matter of law. *Ayers v. Rutherford Hospital*, 689 S.W.2d 155, 162 (Tenn. Ct. App. 1984). Our courts have long held that mutually contradictory statements by the same witness are "no evidence" of the fact sought to be proved. *Church v. Perales*, 39 S.W.3d at 170 (citing *Johnston v. Cincinnati N.O. & T.P. Ry.*, 240 S.W. 429, 436 (Tenn. 1922). Another expression of the same idea is that "[c]ontradictory statements of a witness in connection with the same fact have the effect of cancelling each other out." *Tibbals Flooring Company v. Stanfill*, 410 S.W.2d 892, 896 (Tenn. 1967); *Taylor v. Nashville Banner Publishing Co.*, 573 S.W.2d 476, 482 (Tenn. Ct. App. 1978); *State v. Matthews*, 888 S.W.2d 446, 449 (Tenn. Crim. App. 1993). However, the cancellation rule applies only if the allegedly contradictory statements are unexplained or if neither statement can be corroborated by other competent evidence. *Church v. Perales*, 39 S.W.3d at 170; *State v. Matthews*, 888 S.W.2d at 450.

Mr. Johnson did not explain why he made mutually contradictory allegations at different stages of the proceedings. Nor did he present competent evidence of any of these allegations. The court observed that neither Mr. Johnson's responses nor the alleged counter-offer he presented was accompanied by a supporting affidavit. Rule 56 declares that when faced by a properly-supported motion for summary judgment, the non-moving party may not rest on the mere allegations or denials

of his pleadings, but "by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Tenn R. Civ. P 56.06.

It is therefore well-settled that on a motion for a summary judgment, disputes as to material facts may be created only by affidavits or other sworn evidence of facts, and not merely by unsworn generalized assertions in pleadings. *Third National Bank in Nashville v. Celebrate Yourself Productions*, 807 S.W.2d 704, 707 (Tenn. Ct. App. 1990); *Mason v. Pearson*, 668 S.W.2d 656, 661 (Tenn. Ct. App. 1983); *Wachovia Bank & Trust Co. v. Glass*, 575 S.W.2d 950, 956 (Tenn. Ct. App. 1978). Thus, although Mr. Johnson asserted in his answer that the parties intended the Purchase and Sale Agreement to be tentative, such an assertion is not evidence.

Rule 56.06 also requires that an affidavit be attached to and served with all "sworn or certified copies of all papers or parts thereof . . ." which are submitted for the court's consideration in summary judgment proceedings. The purpose of that requirement is to provide reasonable assurances of the authenticity of such documents.[5] Because of Mr. Johnson's failure to submit such an affidavit, the trial court ruled that his alleged counter-offer should be stricken and not considered. The court's action did not amount to "weighing the evidence," but rather excluding from consideration evidence that was not probative because it was not competent.

If we disregard all the unsupported allegations in the record as well as the documents submitted by Mr. Johnson, which are likewise unsupported by affidavit, very little real evidence remains to be considered, mainly consisting of the Purchase and Sale Agreement, Mr. Baker's supporting affidavit, and Mr. Johnson's deposition. The Purchase and Sale Agreement, which appears regular on its face, purports to bind Mr. Baker to buy, and Mr. Johnson to sell, the subject property for an agreed-upon price of $112,000. Mr. Johnson's signature appears on the last page of the document, in the place designated for acceptance of its terms.

In his deposition, Mr. Johnson identified the Purchase and Sale Agreement presented as the one he had signed. He acknowledged that he had the opportunity to read it, but testified that he didn't read it "word by word" before signing it. "The law presumes that persons who sign documents, having been given the opportunity to read them, are bound by their signatures." *Church v. Perales*, 39 S.W.3d at 161; *Solomon v. First American National Bank*, 774 S.W.2d 935, 943 (Tenn. Ct. App. 1989).

The only contingency set out in the contract was the buyer's ability to obtain adequate financing. However, Mr. Johnson insisted that the contract was a "temporary" agreement because the parties agreed that it was subject to additional contingencies, which the parties did not put in writing. We note that Paragraph 17A of the contract reads, "[t]his Agreement constitutes the sole and entire agreement between the parties hereto and no modification of this agreement shall be

---

[5]Another section of Rule 56 which serves the same purpose, Tenn. R. Civ. P. 56.08, authorizes the court to impose monetary penalties on parties who present affidavits "in bad faith or solely for purpose of delay."

binding unless signed by all parties or assigns to this agreement. No representation, promise, or inducement not included in this Agreement shall be binding upon any party hereto."

The language of Paragraph 17A echoes a basic rule of contract interpretation that parol evidence is not admissible to contradict or vary the terms of a written contract, and any and all prior oral agreements are considered to have been merged into the writing. *See*, *generally*, 7 TENN. JUR. § 60 *Contracts* (2005). Thus, even if we consider Mr. Johnson's deposition testimony in the light most favorable to him, and give him the benefit of all reasonable inferences arising from it, such testimony would still not raise a genuine issue of material fact so as to preclude the grant of summary judgment to Mr. Baker.

Finally, we note that even if Mr. Johnson had succeeded in establishing the authenticity of the documents he submitted, Mr. Baker would still be entitled to prevail. It is a well-established tenet of contract law that once a party has formed a contract by accepting an offer, he cannot subsequently vary the terms of that contract by presenting a counter-offer to the other party. Both versions of the Purchase and Sale Agreement contain Mr. Johnson's signed acknowledgment that the buyer's offer was accepted at 2:00 p.m. on July 26, 2005. The signature on the purported counter-offer bears the same date, but recites a time of 4:30 p.m. Thus, even if such a counter-offer had been presented to Mr. Baker, it would have had no legal effect.

### III.

The judgment of the trial court is affirmed. We remand this case to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant, Homer J. Johnson, Sr.

_____
PATRICIA J. COTTRELL, P.J., M.S.