IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 13, 2011

## JOHN GRIFF LUCAS v. CITY OF WAVERLY, TENNESSEE, ET AL.

**Appeal from the Circuit Court for Humphreys County**
**No. 9961     George C. Sexton, Judge**

_____

**No. M2010-01644-COA-R3-CV - Filed August 31, 2011**

_____

In this inverse condemnation action, the trial court granted summary judgment to condemning authority on ground that statute of limitations barred suit; landowner appeals. Condemning authority urges affirmance of the dismissal on alternative grounds. Finding that the action is not barred by the statute of limitations and that genuine issue of material fact exists which precludes summary judgment, we reverse the dismissal of this action and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., and ANDY D. BENNETT, J.J., joined.

Anthony L. Sanders, Waverly, Tennessee, for the appellant, John Griff Lucas.

Robert E. Cooper, Jr., Attorney General and Reporter, and Mary S. Foust, Senior Counsel, for the appellees, City of Waverly, Tennessee, and Humphreys County, Tennessee.

### OPINION

## I.  Procedural History[1]

This appeal arises out of the widening of State Highway 13 in Humphreys County. The State of Tennessee initiated an eminent domain action in Humphreys County Circuit Court on December 15, 2005, condemning land owned by John Lucas; an Order of

_____

[1] This case has a convoluted procedural history and, in the interest of clarity and brevity, we recount only the history relative to the issues presented in this appeal.

Condemnation and Appropriation was entered on February 6, 2006. On February 5, 2007, while the eminent domain action was pending, Mr. Lucas filed this inverse condemnation action naming the State of Tennessee, Humphreys County, and the City of Waverly as Defendantss, alleging that the road project took an additional fifteen feet of his property, for which he sought compensation. Each Defendants answered the complaint and moved to dismiss the action. Thereafter, Mr. Lucas filed notices voluntarily dismissing the entire action against the State and the cause of action for trespass against the City and the County[2]; the case proceeded on the inverse condemnation claim.

The City and County filed a motion for summary judgment with supporting materials, to which Mr. Lucas responded; the court granted the motion and dismissed the case on the grounds that the action was barred by the statute of limitations contained at Tenn. Code Ann. § 29-16-124. The trial court found that the cause of action accrued on either of two occasions:

> 5. The Plaintiff and affiant Gardner, a Tennessee Department of Transportation (TDOT) representative, had at least two conversations in October, 2002. Gardner presented Plaintiff with the proposed right of way (ROW) plans for the improvement of Highway 13. The ROW plans showed the property Plaintiff claims as his being within the right of way of Highway 13. Plaintiff does not dispute that he received these plans of Highway acquisition and existing property lines; rather Plaintiff's Affidavit states he was furnished various maps and stated that the ["]margins of Highway 13 were shown incorrectly." Plaintiff's Affidavit states that the dispute went on for several years.
>
> 6. Pursuant to Tenn. Code Ann. Section 29-16-123 a cause of action for inverse condemnation arises when the landowner is aware that his land has suffered injury of a permanent nature and the property has been physically occupied for purposes of internal improvement. The Court finds and concludes as a matter of law that there was notice of a permanent injury in October, 2002, and that the cause of action [occurred] at the time of the conversations between Gardner and Plaintiff Lucas. The Court finds and concludes these conversations were sufficiently detailed to alert the Plaintiff that the Defendants were appropriating real property for [the] purpose of internal improvement.

---

[2] An Order of Nonsuit as to the State was signed by the Chancellor on October 2, 2008 and filed on October 6. The record does not contain a separate order of nonsuit as to the cause of action for trespass against the City and the County.

7. The Court concludes a matter of Law that there was another permanent injury sufficient to alert the Plaintiff that the Defendants had appropriated the area complained of in the complaint in connection with a waterline that the City of Waverly intended to install. The City of Waverly's representatives requested Plaintiff Lucas to execute a deed granting the City written permission to cross his property to install a water line. The writing given to Lucas was entitled "Map showing easement description for deed of easement["] which Map was dated 4/14/00, revised 2/7/02 & revised 4/11/02. The Court concludes that Lucas signed the deed of easement knowingly and voluntarily. The Court finds the easement contains two maps (recorded Book 184. pages 1679 and 1680) designating the property Plaintiff claims he owns as 'existing right of way' for Highway 13. When Lucas signed the deed of easement on Friday 13, 2003, he was aware that the City or TDOT claimed the property Lucas now alleges he owns.

Mr. Lucas appeals, asserting the following issues:

A. Whether the trial court erred in finding that the City of Waverly and Humphreys county established the affirmative defense of statute of limitations, as governed by T.C.A § 29-16-124.

B. Whether the trial court erred in finding that John Lucas sustained a permanent injury to his property, thus constituting a taking, and had notice of that permanent injury in October, 2002 based upon conversations that took place between John Griff Lucas and Robert Gardner, or alternatively that John Griff Lucas sustained a permanent injury to his property, thus constituting a taking, and had notice of that permanent injury on February 13, 2003 based upon the execution by John Griff Lucas of a deed granting the City of Waverly an easement across his property for purposes of installing a waterline.

C. Whether the trial court erred in finding that no genuine issues of material fact exist concerning whether the statute of limitations for inverse condemnation actions bars Mr. Lucas' complaint.

The City and County present the following additional issues for review:

1. Whether the trial court erred in concluding that there remains a genuine issue of material fact regarding the ownership of the real property involved in this case.

2. Whether the trial court erred in omitting the physical description of the real property at issue in this case from the Judgment and Final Decree entered in this case.

-3-

3. Whether the trial court erred in stating in its Judgment and Final Decree that the sole grounds for dismissal of this case was the one-year limitation of actions provided by Tenn. Code Ann. § 29-16-124 when other grounds for dismissal (such as lack of proof of ownership and estoppel by deed) exist.

## II. Discussion

### A. Standard of Review

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8–9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shutup' or even to cast doubt on a party's ability to prove an element at trial." *Id*. at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id.* at 5 (citing *Byrd v. Hall*, 847 S.W.2d 208, 215(Tenn. 1993)). The non-moving party may accomplish this by:

> "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. Rule 56.06."

*Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008)(citations omitted).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Draper v. Westerfield*, 181 S.W.3d 283, 288 (Tenn. 2005); *BellSouth Adver. & Publ. Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003); *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 284 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). We review the summary judgment decision as a question of law. *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 437 (Tenn.1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v.*

*West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004); *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 88 (Tenn. 2000).

In our review, we must consider the evidence presented at the summary judgment stage in the light most favorable to the non-moving party, and we must afford that party all reasonable inferences. *Draper*, 181 S.W.3d at 288; *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001). We must determine first whether factual disputes exist and, if so, whether the disputed fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). "If there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied." *Byrd*, 847 S.W.2d at 211.

In their motion for summary judgment, Defendantss contended that summary judgment was appropriate because: (1) the action was barred by Tenn. Code Ann. § 29-16-124; (2) the land in dispute was included in land acquired when Highway 13 was originally constructed between 1940 and 1945; and (3) Mr. Lucas was estopped to claim that the western margin of the Highway 13 right of way was other than as described in a public utility easement he executed to the City of Waverly in 2002, which incorporated the then existing margin.[3] Defendants also asks this court, if we hold that the trial court erred in granting summary judgment on the ground stated, to affirm the grant of summary judgment on the alternative ground that Mr. Lucas has not established he is the owner of the property—an essential element of an inverse condemnation claim—and upon the ground of estoppel by deed.

### B. Statute of Limitations

Tenn. Code Ann. § 29-16-123 allows a landowner whose property is taken by an authority exercising the power of eminent domain to pursue an inverse condemnation action. *See Meighan v. U. S. Sprint Comm. Co.*, 924 S.W.2d 632, 640–41 (Tenn. 1996). Such actions must be commenced within twelve months after the land has been taken and the work begun or, if the owner is unknown or under certain disabilities, within twelve months after

---

[3] In support of their motion, Defendants relied upon the affidavits of Albert Zimmerman and Robert Gardner and maps and deeds attached to the affidavits in support of their motion; they also filed a Statement of Undisputed Material Facts.

the owner acquires actual knowledge of the taking or removal of the disabilities. Tenn. Code Ann. § 29-16-124.[4]

Mr. Lucas argues that the record does not show that his property had actually been taken in either October 2002 or on February 13, 2003 but, rather, that construction of the improvements to Highway 13 did not begin until after February 6, 2006, the date of entry of the Order of Possession in the condemnation proceeding. He asserts that neither the conversations between he and Mr. Gardner referenced in the court's findings nor his grant of the easement to the City to construct the waterline created "an injury of a permanent nature . . . sufficient to constitute a 'taking' thus triggering the statute of limitations."

Robert Gardner's affidavit recited that he worked from 2002 to 2004 as an independent contractor with Capitol Consultants, which had a contract with the Tennessee Department of Transportation to negotiate with landowners whose property fronted on Highway 13. In this capacity, Mr. Gardner met with Mr. Lucas in September and October of 2002 and presented to him a copy of the plans for the project; in both meetings, Mr. Lucas expressed his belief that the State's determination of its right of way and the tax maps showing the boundaries of the property owners were not correct. In June 2004, Mr. Gardner had another conversation with Mr. Lucas, in which Mr. Gardner advised that the tax map had been corrected and that the Department had reviewed the revised map and believed the right of way line was correct.

Mr. Lucas' affidavit, filed in response to the motion, does not specifically address the conversations with Mr. Gardner, although he does acknowledge telling "Capitol Consultants" that the maps which he had been furnished were incorrect; he states that he "did not know if the land in question was going to be taken or if the map was going to be corrected." He further acknowledges receiving a letter in December 2005 from Mary Foust, counsel for Defendantss, advising that "the State would be taking the property in the implementation of the project in question (widening of Highway 13)."

---

[4] Tenn. Code Ann. § 29-16-124 provides:

> The owners of land shall, in such cases, commence proceedings within twelve (12) months after the land has been actually taken possession of, and the work of the proposed internal improvement begun; saving, however, to unknown owners and nonresidents, twelve (12) months after actual knowledge of such occupation, not exceeding three (3) years, and saving to persons under the disabilities of infancy and unsoundness of mind, twelve (12) months after such disability is removed, but not exceeding ten (10) years.

Defendants also asserted that the fact that Mr. Lucas signed a utility easement in February 2002 was proof that he was aware of the boundaries of the claimed right of way as early as 2002. The affidavit of Albert Zimmerman, employee of QK4 Architecture Engineering Planning, which contracted with the Department of Transportation to perform the survey and design work for the Highway 13 improvement project, discussed the utility easement Mr. Lucas conveyed to the City of Waverly. In his affidavit, he states that "[i]t appears that the Highway 13 ROW [right of way] plans that I developed were used as the base mapping for the easement [plotted on Deed Book 184, page 1680]." With respect to the easement, Mr. Lucas states in his affidavit that "[t]he easement was without warranty as I did not agree with the drawing as shown and that is why I refused to give a warranty with the easement and this was explained to the City Attorney, John Lee Williams."

The affidavits and other material filed by Defendants in support of the motion did not show that Defendants had actually taken possession of the property in 2002 or that the project was begun at any time prior to February 5, 2006—one year prior to the filing of this suit. Indeed, Mr. Lucas' affidavit recites that he was advised in December 2005 only that the State "would be taking the property." The evidence shows at most that the road project was planned; performance of the project did not begin until the State initiated the condemnation proceeding in February 2006.

The conversations Mr. Lucas had with Mr. Gardner did not satisfy the requirement of Tenn. Code Ann. § 29-16-124 that the land "actually be taken possession of, and the work of the proposed internal improvement begun" before the twelve month period for the landowner to initiate suit. Similarly, inasmuch as Defendants had not taken possession of the land or begun work on the road project, Mr. Lucas' conveyance of the utility easement to the City in 2002 is not germane to the statute of limitations issue.[5] The trial court erred in holding that this action was barred by Tenn. Code Ann. § 29-16-124.

### C. Ownership of the Property at Issue

Defendants urge this court to affirm the dismissal of the action on alternative grounds, premised upon their contentions that Mr. Lucas did not own the property at issue and that he was estopped to assert that his property was other than that described in a deed he executed granting a waterline easement to the City of Waverly. Defendants dispute that the 15 foot

---

[5] *See Knox County v. Moncier*, 455 S.W.2d 153, 156 (Tenn. 1970) ("The statute of limitations should be applied in such a manner that the landowner will have the one year period within which to bring his suit 'after injury or after reasonable notice or knowledge of such injury and damage.' *Morgan County v. Neff* (1953), 36 Tenn.App. 407, 256 S.W.2d 61.").

tract of land adjoins the Highway 13 right-of-way; they contend, based on the affidavits and materials filed in support of the motion, that the disputed tract is actually within the boundaries of the Highway 13 right-of-way.

Mr. Zimmerman based his location of the disputed tract on the Highway 13 right-of-way as shown on plans prepared in 1939 when the highway was originally constructed. He stated in this regard:

> 1. . . . My company performed the survey work for this property in May 1997 and I did the design for the widening of Highway 13, for this part of the project, in the fall of 1997. In developing the right of way plans for Highway 13, my company used the proposed right of way shown on the 1939 plans. [The 1939 proposed right of way would be denoted as 'existing' right of way on my design plans.] We then plotted the most current deeds for the properties as shown on the tax maps in 1997 and we surveyed property lines where we could find them.
> I have reviewed the survey field data my company compiled and reviewed the 1939 Highway 13 plans. I was able to match up the centerline of the old plans with the centerline of the existing Highway 13 survey information which provided me with the basis of my design to widen Highway 13.

His affidavit also identifies the issue at the heart of this dispute:

> 2. The old (1939) plans depict there was a landowner named A. W. Lucas on the western margin of Highway 13 between Mathews Hollow Road and Marable Road. On the old plans there was no Clydeton Road, as Clydeton Road was constructed in the 1970's. According to the Clydeton Road plans, that surveyor located a pin at the north side of Clydeton Road, where it intersects with the western margin of Highway 13. Our survey crew did not locate this pin in 1977, (during the Highway 13 survey work), however, it may have existed. What the survey crew was trying to locate was any highway monuments, as a pin could mean an old corner, or a point in a side line; the highway monument designates with lettering that the property is owned by some governmental entity.
> * * *
> 4. I also reviewed a plans sheet from the Clydeton Road project which was constructed by the City of Waverly in 1977. The sheet was entitled Property Map for State Route 1-State Route 13 Bypass. The sheet indicated that the new road was to connect Highway 13 to Main Street, (US 70/SR 1). I did not have these Clydeton Road plans sheets when I did my Highway 13 design, but

now that I have these plans, I labeled my Highway plans exhibit for this Lucas tract with pins/monuments that I have noted from the Clydeton Road plans. Basically, the only monument would be the centerline of Clydeton Road. . . .

* * *

6. I find it significant that Lucas' legal descriptions do not give any reference to a locatable existing monument on the ground for a surveyor to find. The legal descriptions state that the 'western margin' of the highway is the boundary line for Lucas' property, but this doesn't define where the margin of the highway is, such as to be located on the ground.

Defendants also filed the affidavit of Roger Jones, Geographic Information Systems (GIS) Technical Supervisor II with the Tennessee Comptroller's Office, who had been asked by counsel for Defendants to assist in locating the western boundary line for Highway 13. The affidavit states, in part pertinent to this discussion:

I have reviewed the survey data compiled and labeled on the 'new' Highway 13 plans and I have reviewed the 1939 Highway 13 plans. I was able to match up the centerline of the old plans with the centerline of the 'new' Highway 13 survey information. These two plans are part of the overlay exhibit. The centerline is considered to be one of the monuments of Highway 13 and they were located by the survey for the newer Highway 13 plans. In my opinion, the 'exist. and prop. ROW' line (as shown in DB 184, pp 1679-1680) is Lucas' eastern boundary line. That line hasn't changed since the 1939 plans were drawn to the best of my knowledge, information and belief.

Defendants also filed the affidavits of three employees of Gresham, Smith and Partners, an engineering firm engaged by the City of Waverly to relocate underground water and sewer lines necessitated by the Highway 13 widening project. Those affidavits generally discussed the easements obtained from Mr. Lucas in connection with the water line relocation project and stated that, in designing the plans for the water lines, they relied on the Highway 13 right of way as shown on the Department of Transportation plans. The affidavits and other materials filed by Defendantss in support of their motion were sufficient to negate Mr. Lucas' contention that he was the owner of the property in question; as a result, the burden then shifted to him show that a genuine issue of material fact exists. *Hannan*, 270 S.W.3d at 5.

In his complaint, Mr. Lucas alleged that his property was derived by instrument of record in Deed Book 127, page 130, Will Book Q, page 313, and Will Book U, page 250. His affidavit states the following with reference to the property and his chain of title:

3. I am the Plaintiff in this case and a Defendant in the case of <u>State of Tennessee v. John G. Lucas</u>, Docket No. 9907 in the Circuit Court of Humphreys County, Tennessee and 9907 is a direct condemnation action where the state is attempting to take property located on both sides the [sic] State Route 1 - State Route 13 By-Pass and lands located between the old Cemetery Road and the Marable Cemetery Road, including slope easements.

* * *

5. I own the property which is the subject of both cases and derived one-half interest of the property from my trust created for me by my father and then received the other one-half interest in the property at my step-mother's death. . . .

6. The above designated real property is located on the west margin of Highway 13 and runs with the highway beginning at Marable Cemetery Road, running southward to almost Matthews Hollow Road and is divided by Mary Rawlings property and a road project generally known as the Clydeton Road, Cowan Avenue, and officially named State Route 1 - State Route 13 By-Pass.

* * *

15. Tom White was involved in the surveys for the acquisition of properties for the State Route 1 - State Route 13 road project. (Clydeton Road, Cowan Avenue). A copy of this road project further supports my position and a copy is attached as Exhibit No. 7 as the margin of Highway 13 is shown to intersect as scaled 50 feet from its centerline and is further evidenced by a boundary pin which was set by Sam Long, County Surveyor. This pin is shown on the State Route 1 - State Route 13 road project (Clydeton Road, Cowan Avenue), which was the southeast boundary of the Town Hill restaurant property. Furthermore, Tom White performed a boundary survey which was paid for jointly by Thomas A. Armstrong and myself. This survey further showed that the boundary of Highway 13 was 50 feet from its centerline. All of these pins for this survey have been found except for the pin at the margin of Highway 13 which was destroyed, presumably by the State of Tennessee during construction of the new project (widening). . . .

20. My step mother and myself executed deeds for the conveyance of property for the State Route 1 - State Route 13 (Clydeton Road, Cowan Avenue) Project and were later contacted by Orbin Pegram, of the City of Waverly, to execute a deed of correction to reflect the fact that the roadway was not build [sic] as exactly as originally described and we executed the deed of correction as an accommodation and without additional consideration. This deed did not in any way change the location of the boundary margin of Highway 13 prior to this new project. The metes and bounds as a portion of the deed of correction are reflected in the Tom White survey of 1979, which

definitely shows the margin of Highway 13 as 50 feet from its centerline. All of the lands which were deeded to the City of Waverly for the State Route 1 - State Route 13 project were not included in the deed of record in Deed Book 74, page 577. Some additional lands are described in at least one and maybe two other deeds.

Mr. Lucas also filed the affidavit of Christopher White, a surveyor, in opposition to the motion for summary judgment.[6] Mr. White's affidavit states in pertinent part:

> 5. I performed a survey for John G. Lucas on property west of and adjacent to Highway 13 and generally lying south from Marable Road to almost Matthews Hollow Road and the property is intersected with the Highway 13- State Route 1 (Cowan Avenue, Clydeton Road Extension).
> 6. In performing the survey I followed the requisite statutes and regulations concerning surveys conducted in the State of Tennessee.
> 7. It is my professional opinion that on the property identified to me by John G. Lucas as his property, I found small strips of property which would run in a smooth north-south direction which were not included in the condemnation case of the State of Tennessee against John G. Lucas.
> 8. I identified those strips of property by cross hatching on the survey plat that I drafted from my survey of the John G. Lucas property.

The information contained in Mr. Lucas' and Mr. White's affidavits and the exhibits attached to the affidavits are sufficient to create a genuine issue of fact as to the location and ownership of the disputed tract. Defendants contend that the property acquired as part of the original Highway 13 extended 65 feet from the centerline of Highway 13; the materials upon which their contention as to the location of the line is based is predicated on the 1939 Highway 13 plans. To some extent, however, the Zimmerman affidavit raises a question as to the reliability or weight to be afforded to property descriptions which use the 1939 center line. The documents show that Clydeton Road, constructed in the 1970's, intersected with Highway 13; pins and monuments associated with the Clydeton Road project were not located when the expansion plans for Highway 13 were prepared in 1997. Similarly, the Jones affidavit does not definitively state where the center line of Highway 13 is. Mr. Lucas contends (supported by a survey by Tom White) that Defendants' right of way only goes 50 feet from centerline of Highway 13. Considering the evidence in the light most favorable to Mr. Lucas and affording him all reasonable inferences, Defendants have not shown the

---

[6] It is not clear if the Tom White referred to in Mr. Lucas' affidavit is the same person as Christopher White.

absence of a genuine issue of material fact and, consequently, have not established their entitlement to judgment as a matter of law.

### D. Estoppel

Defendants also assert that Mr. Lucas is estopped to deny that his property line is other than as stated in three deeds he executed because the deeds "acknowledge 'the existing and proposed right-of-way line' [terminology used in the property descriptions in the deeds] of State Highway 13 is located as the engineering plans for the improvement of State Highway 13 indicates." Defendants contend that the deeds "support the contention that the common boundary between Appellant's 13-acre tract and the State Highway 13 right of way line remains as established by the 1939 eminent domain acquisition from A. W. Lucas, the Appellant's grandfather" and put Mr. Lucas "on notice" that the state and local governments consider the 'existing and proposed right-of-way line' to be as indicated on the deeds and related maps. In light of the factual issue of the ownership and location of the disputed tract, discussed *supra*, we respectfully disagree with the proposition that Mr. Lucas is bound by what could be an erroneous description of the Highway 13 right-of-way. Moreover, the record does not show Defendants have demonstrated that this is an appropriate case for the application of estoppel principles.

"Estoppel by deed is a bar which precludes one party to a deed and his privies from asserting as against the other party and his privies any right or title in derogation of the deed or from denying the truth of any material facts asserted in it." 19 Am. Jur., Estoppel, Sec. 6, p. 603. *Denny v. Wilson County*, 281 S.W.2d 671, 675 (Tenn. 1955). Before establishing estoppel by deed, the parties relying on the estoppel must prove that they (1) lacked knowledge of the true facts; (2) relied upon the untrue facts; and (3) took action based on the untrue facts. *Lampley v. Romine*, No. M2005-01726-COA-R3-CV, 2006 WL 3728907 (Tenn. Ct. App. Dec. 15, 2006).

In *Lampley*, a boundary dispute case, which, like the present case, involved conflicting surveys, the Lampleys received their property, consisting of twenty acres, by deed from family members. A .07 acre parcel had been omitted from the deed as well as from a subsequent quitclaim deed executed between the Lampleys for estate planning purposes; this tract became at issue when the Romines purchased an adjoining tract and secured a survey showing the .07 acre tract to be on the Romine property. At trial, the Romines sought to estop the Lampleys from claiming ownership of the .07 acre parcel; the trial court refused to apply estoppel by deed, finding that the Romines had not relied on the erroneous deed. On appeal, this court affirmed the trial court, holding that reliance "must be shown in order to claim estoppel by deed. . . ." *Lampley*, 2006 WL 3728907 at *2.

The record is devoid of any proof that Defendants relied upon either of the deeds executed by Mr. Lucas in any aspect of the Highway 13 widening project. As a consequence, Mr. Lucas is not estopped from challenging the Defendants' location of the disputed property, including the surveys upon which the Defendants' descriptions are based.

## III. Conclusion

For the foregoing reasons, the judgment of the trial court is REVERSED and the case REMANDED for further proceedings in accordance with this opinion.


_____
RICHARD H. DINKINS, JUDGE